JUDGE REARDEN

25 CV 07968

UNITED STATES DISTRICT COURT
Southern District of New York

_____X

In the Matter of the Application of

SHANTELL McKINNIES,                                    **VERIFIED COMPLAINT**

Plaintiff,                                                           Civil Action No: _____

-against-                                                          Jury Trial Demanded: ■ Yes ☐ No

THE CITY of NEW YORK,

New York City Police Department, former
Police Commissioner Keechant
Swell, Internal Affairs Commander, Det.
Mezchelyn Ellis, Det.Andrew Fitzgerald,
Det. Vanessa Delossantos, Lt. Hong Chen,
Cpt. Kathleen Fahey, P.O. Matthew Ficara,
P.O. Fabiana Canelliz, NYPD Records
Officer Katrine Obanhen,
NYPD Psychologist Adam Bloom
"Jane Doe" and "John Doe" 1-50 inclusive,
the names of the last defendants have
been withheld, the true names of the
defendants are unknown to the plaintiff.

Dept of Inspector General of (NYPD)
Investigator Subir, Investigator Degraf



Defendant(s)
_____X

Plaintiff Shantell Mckinnies is a Pro-Se Litigant, and for this action, alleges as follows:

### Preliminary Statement

1.      The defendant's City, as matter of policy, and practice, has with deliberate indifference to
official oversight willfully allowed the New York City Police Department ("NYPD") to operate as a

racketeering enterprise in engaged in a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Act (RICO), 18 U.S.C § 1961 et seq.

2.      The Enterprise consisted of individual NYPD officers, supervisors, affiliated actors, and outside collaborators who have systematically abused their authority, including but not limited to, unlawfully weaponizing federal surveillance infrastructure—specifically, the Foreign Intelligence Surveillance Act (FISA) processes—to retaliate against plaintiff.

3.      Defendant(s) individual NYPD officers and supervisors with deliberate intent placed plaintiff on a **FISA watchlist through misrepresentation or falsified intelligence**, exploiting section 218 of the Patriot Act, in violation of 18 USC §§ 241 and 242.  Defendants collude with each other to subject plaintiff to **egregious** IIED (Intentional Infection of Emotion Distress) under protective provisions under the FISA Act, by sweeping surveillance, including "sneak and peek" searches and warrantless data collection, and psychological operations intended to destabilize plaintiff's emotional stability, quality of life and earning potential.

4.      Defendant(s), agreed upon with each other, individually and collectively under color of law, to knowingly and willfully exploited provisions of Section 215 and/or Section 702 of the USA PATRIOT Act, as incorporated into the Foreign Intelligence Surveillance Act ("FISA"), to circumvent plaintiff's constitutional rights. By misusing these statutory mechanisms, defendant(s) orchestrated a "back-door" method of surveillance and information gathering without lawful judicial oversight, thereby concealing their involvement under the cloak of national-security exceptions. Such conduct exceeded any legitimate investigative purpose and constituted a deliberate abuse of statutory authority to suppress plaintiff's protected activity, evade accountability, and obstruct redress through concealment of their misconduct.  Their subterfuge actions impede upon the ethical fiduciary functions of the NYPD and affiliated agencies.

5.      Furthermore, defendant(s), acting individually and collectively under color of state law, together with defendant City, as an instrumentality aiding and abetting their unlawful conduct, engaged in the wrongful acts herein in; wire and mail fraud under 18 U.S.C §§ 1341 and 1343 by disseminating materially false information through official City systems, obstruction of justice under 18 U.S.C § 1503 by the concealment and destruction of evidence, 18 U.S.C § 2261(a) by traveling commerce to intimidate potential witness(s) and surveillance, honest service fraud under 18 U.S.C § 1346 by using a legitimate legal process as a pretext to obtain funding, service, and compliance from government and local agencies.  Their subterfuge actions impede upon the ethical fiduciary functions of the NYPD and affiliated agencies.

6.      Defendant(s), acting individually and collectively under color of state law, took adverse actions that would deter a person of ordinary firmness from continuing to speak or petition, including covert warrantless surveillance, punitive and irregular disciplinary measures, and the manipulation or blockage of grievance and investigatory mechanisms. Plaintiff's protected activity was a substantial or motivating factor in these actions, as shown by temporal proximity, expressed hostility to her speech, and departures from established procedure.

7.      The City, through its agents, employees, and policymakers, provided authority, resources, and ratification that enabled the individual defendant(s) to carry out the unconstitutional and unlawful schemes effectuated through the misuse of CITY systems, within their respective departments i.e Internal Affairs Bureau, Inspections Division, and Legal Bureau. The defendant(s) acting individually and collectively under color of law, with the intent to suppress accountability in their abuse of process, abuse of authority perpetrated and obscured by the misuse of the (NYPD) department funding and administrative resources.

8.      Defendant(s) knew or should have known that the plaintiff posed no threat to national security or any domestic or foreign authority. Nevertheless, they proceeded to violate the plaintiff's civil rights without just cause, constructing a fabricated history around the plaintiff that would **NOT** otherwise exist. Defendant(s) knew, or in the exercise of reasonable diligence should have known, that plaintiff had not committed any violations of federal, state, or local law, whether domestically or internationally.

9.      For more than six years, defendant(s) acting individually and collectively under color of law—have orchestrated and **CONTINUE** to perpetrate individual acts of criminal and unlawful conduct that reflect a persistent, coordinated **pattern** carried out by multiple actors colluding without lawful authority. On or about April 4, 2025, information came to light indicating that the conduct alleged herein was undertaken jointly by defendants in furtherance of an ongoing conspiracy to withhold material evidence.

10.      Acting individually and under color of law, defendant(s) legal Bureau officers failed to comply with their own orders and policies and violated New York's Freedom of Information Law ("FOIL"), Public Officers Law, art. 6, §§ 84–90, particularly following the repeal of Civil Rights Law § 50-a, by willfully withholding evidentiary materials for more than three years to obstruct and delay redress. **The withheld records identify, inter alia, specific names, roles, dates, times, and locations of predicate acts and participants in the conspiracy, and include the identities of the "John Doe" and "Jane Doe" defendants.**

11.      Despite the parties' agreement that, on or about April 4, 2025, defendants would produce materials pertinent to this action, defendants failed and refused to comply with said obligation. (see: Ex. A)

12.      On or about May 8, 2025, plaintiff served a Notice of Claim upon the City of New York Comptroller's office. (see: Ex. B)

13.      Plaintiff asserts her claims are timely under federal accrual principles and applicable tolling doctrines, notwithstanding that defendants' coordinated misconduct spans more than six years, because material facts were fraudulently concealed and key records were unlawfully withheld in violation of FOIL. Plaintiff invokes:
        (a) Accrual/Discovery: Federal accrual rules for 42 U.S.C. §§ 1983 and 1985 (claims accrue when the plaintiff knows or has reason to know of the injury), with later-discovered acts

and injuries accruing separately as newly discovered facts emerged;

     (b) Fraudulent Concealment: Equitable tolling based on defendants' active concealment and suppression of evidence necessary to identify responsible parties and plead claims with particularity;

     (c) Equitable Tolling: Tolling during periods when defendants' withholding of records and interference with complaint and investigatory processes made timely filing impracticable despite diligent efforts;

     (d) Continuing Violation: A continuing course of related retaliatory and conspiratorial acts places actionable conduct within the limitations period, allowing consideration of the full pattern;

     (e) Related New York Limitations Framework: To the extent New York limitations inform or are borrowed for federal claims, plaintiff pleads timeliness under CPLR § 214 (three-year period for personal-injury-type claims) and acknowledges other potentially applicable provisions (including CPLR § 217 for Article 78 practice) while preserving all arguments for tolling and relation-back as identities of Doe defendants are revealed.

14.    Defendants' deliberate nonproduction of evidentiary materials for over three years impeded plaintiff's ability to bring forth a **legally effective** case in plaintiffs' prior action, additional newly arising allegations of ongoing misconduct and to timely identify the Doe defendants; plaintiff therefore pleads tolling, relation-back, and leave to substitute named parties upon identification through discovery.

15.    Plaintiff further asserts that a prior action commenced against the defendants pursuant to 42 U.S.C. § 1983, arising from employment discrimination and filed with the Equal Employment Opportunity Commission ("EEOC"), which was subsequently dismissed, has no preclusive effect and bears no relevance to the distinct claims asserted in this action.  Moreover, despite being lawfully notified, the defendants willfully failed and refused to provide a **"Position Statement"** to the EEOC's inquiries. This deliberate omission exemplifies defendants' ongoing pattern of obstruction, delay, and disregard for **ANY** lawful process, further evidencing their bad faith and unethical manipulation of judicial, and administrative procedures. The defendants' failure to engage with the EEOC underscores their questionable conduct, and continuing practice of evading accountability and undermining the plaintiff's statutory right to pursue redress through established legal channels.

16.    **TAKE Notice**, Plaintiff respectfully requests that this Court permit all allegations arising prior to April 4, 2023 claim  to remain part of the record, as such allegations are necessary to establish that defendants' misconduct does not constitute isolated or discrete incidents. Rather, these allegations demonstrate a continuous and deliberate pattern of abuse of authority and manipulation of judicial and administrative processes, carried out through an ongoing racketeering-in-fact enterprise.

17.      Defendants interfered with plaintiff's Article 78 proceedings (Index No. [#56-2025]) in Brooklyn Supreme Court by engaging in improper ex parte contact with a Court Clerk personnel, resulting in the unlawful dismissal of plaintiff's matter.  Plaintiff's Article 78 proceeding was dismissed for "failure to appear," notwithstanding that no court order had ever required plaintiff's appearance.

18.      Plaintiff asserts defendant John Doe's improper contact with court personnel influenced or interfered with the administrative processing of plaintiff's filing, thereby unlawfully impeding the judicial process and depriving plaintiff of due process of law.  A complaint has been filed with the Attorney General and Inspector General office.

19.      The defendant, "CITY" yet again sought to obstruct and disrupt lawful proceedings by scheduling a 50-h hearing on September 8, 2025. Without proper notice or legal courtesies, defendants unilaterally canceled said hearing with the plaintiff.

20.      Through plaintiff's diligence, a new hearing date was promptly secured for September 12, 2025. However, defendants again failed to extend proper legal courtesies, including timely communication and confirmation. The City, by way of an email response, indicated that it would address these inconsistencies the following Monday, but thereafter ceased all communication, further evidencing a pattern of illegal and unethical conduct by defendant(s), CITY and their counterparts Kres & Flores, LLP.

21.      In addition, plaintiff placed the CITY on notice by providing evidentiary materials intended to aid defendants in their preliminary investigation of plaintiff's claims. Notwithstanding such notice and supporting documentation, defendants have engaged in continued manipulation of the proceedings with the deliberate intent to delay, obstruct, and frustrate the forward movement of this action and any related action plaintiff brings before the Court.

22.      Due to the repeated unethical conduct of defendant CITY, defendant(s), and their counsel Kres & Flores, LLP, and their demonstrated ability to misuse official positions to manipulate and improperly influence the procedural course of this action, plaintiff respectfully requests the appointment of judicial oversight by a neutral and disinterested party. Such oversight is necessary to ensure the impartial administration of justice, preserve the integrity of these proceedings, and safeguard plaintiff's rights from further prejudice or undue influence. (see: Ex. C)

23.      **WHEREFORE**, plaintiff respectfully requests that this Court **"DENY"** any and all motions by defendants for extensions of time and require defendants to respond to this complaint as mandated by law within **twenty (20) days of receipt**. The repeated conduct of the City and its agents have caused significant prejudice to the plaintiff and constitute a deliberate abuse of process.

24.      Defendant CITY, through negligence and systemic failure to exercise oversight over NYPD individual agents and John Doe(s) and Jane Doe(s), opened the door for plaintiffs'

5

statutory violations to occur. Systemic abuse is built into the structure of the NYPD which essentially erodes public trusts.  They routinely violate their own protocols, internal policies, and the legal process thereby perpetuating a lack of transparency and accountability essential to public service.

25.     Plaintiff expressly reserves the right to amend this complaint to substitute the true names and capacities of the "John Doe" and "Jane Doe", defendants once their identities are ascertained through discovery or court-ordered disclosure. Under Fed. R. Civ. P. 15(c), such amendments will relate back to the original filing date because the claims against said defendants arise out of the same conduct, transaction, or occurrence set forth herein, and because defendants have had notice of the claims and will not be prejudiced in maintaining a defense on the merits. Plaintiff further invokes applicable state-law relation-back doctrines, including CPLR § 1024, which authorizes substitution of "Doe" defendants where the party has exercised due diligence in identifying them but has been **thwarted by defendants' concealment or withholding of records.**

26.     Plaintiff respectfully **"PETITIONS"** this Honorable Court to appoint an independent monitor—whether through Congress, the Department of Justice, or another appropriate authority—to review and investigate the justification and procedures by which plaintiff was placed on any government watchlist and subjected to unlawful investigations without the authority of law, forensically evaluate the handling of the defendants current and past actions internally, externally and legally.   Said monitor should be empowered to recommend corrective measures to prevent ongoing misuse. The defendant's conduct is a direct threat to public safety and the integrity of the judicial process.

27.     Plaintiff has been systemically denied recourse from institutions intended to protect civil liberties, and the harms suffered are continuing in nature. The plaintiff has reported the defendant's conduct to multiple oversight bodies including the Police Commissioner, IAB, Federal EEOC, FBI, Attorney General, Inspector General, and CCRB.

28.     The above acts constitute related and continuous predicate conduct forming a pattern of racketeering activity, including—but not limited to—obstruction and mail/wire-based schemes to conceal material information."  "Defendants' conduct reflects an unofficial custom and practice of obstructing access to records and retaliating against complainants, for which the defendant, "City", and NYPD individual agents are liable.

# TABLE OF CONTENTS

**<u>Heading</u>**                                                                                **<u>Page #</u>**

**Preliminary Statement**                                                                   2

**Nature of Action**                                                                           9

**Jurisdiction**                                                                                  9

**Venue**                                                                                           9

**Parties**                                                                                         9

**RACKETEERING INFLUENCE AND CORRUPT**                             10
**ORGANIZATION ACT (RICO) 18 U.S.C § 1961**
**et seq. CLAIMS**

    A.  RICO CLAIM ( 18 U.S.C § 1962 (c))
    B.  RICO CONSPIRACY ( 18 U.S.C § 1962 (d))

**9.35 BIVENS ACT CLAIMS 1971 (U.S.C § 1983)**                             13

    A.  Fourth Amendment (unlawful search and seizure)
    B.  Fifth Amendment (due Process/equal Protection)
    C.  First Amendment (free speech, association, and to petition the government for redress)

**INTERSTATE STALKING (18 U.S.C. § 2261A)**                                15

**TITLE III - ELECTRONIC COMMUNICATIONS**                              24
**PRIVACY ACT (ECPA) 18 USC §2510 et seq. CLAIMS**

    A.  WIRETAP ACT ( 18 U.S.C § 2510)
    B.  STORED COMMUNICATIONS ACT ( 18 U.S.C § 2701)
    C.  PEN REGISTER/TRAP AND TRACE STATUE ( 18 U.S.C § 3121)

**FACTUAL ALLEGATIONS COMMON TO**                                        26
**CAUSES OF ACTION**

**CAUSE OF ACTION**                                                                     34

-       Count I – Violation of Racketeering Influenced and Corrupt Organization Act
        Civil RICO (18 U.S.C. § 1962(c)) Conspiracy (18 U.S.C. § 1962(d))

-     Count II – Interstate Stalking (18 U.S.C. § 2261A)
-     Count  III– Whistleblower Retaliation (NYS Civil Service Law §§ 75-b, 76)
  Prayer For Relief
-     Count IV –  Title III - Electronic Communications Privacy Act (ECPA)
  18 USC 2510 et seq. CLAIMS: Wiretap Act ( 18 U.S.C § 2510 )
  Stored Communication Act( 18 U.S.C § 2701)
  Pen Register/Trap( 18 U.S.C § 3121)
-     Count  V– Monell Liability (42 U.S.C. § 1983)
-     Count VI – Bivens State Tort Claim:
  Invasion of Privacy / IIED / Defamation /Constructive Discharge
  (42 U.S.C §§ 1983 and 1985)
-     Count VII – First Amendment Violation  (42 U.S.C §§ 1983 and 1985)
-     Count IX – Fourth Amendment Violation  (42 U.S.C §§ 1983 and 1985)
-     Count X – Fourteen Amendment Violation  (42 U.S.C §§ 1983 and 1985)

**NATURE OF ACTION**

29.     This is an action at law to redress the derivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and or to redress deprivation of rights, privileges, and immunities secured to the plaintiff by First, Fourth, Fourteenth Amendments to the Constitution of the United States, City Liability Under Monell and by Title 42 U.S.C §§ 1983, 1985, and Bivens Act arising under the law and statutes of the State of New York.

30.     This action seeks compensation for the serious and permanent personal injuries sustained by the plaintiff, as a result of the defendant's acts of official corruption.  Plaintiff further seeks compensation for loss of income and administrative benefits.  Plaintiff seeks compensatory and punitive damages, injunctive and declaratory relief and such other relief as the court deems equitable and just.

**JURISDICTION**

31.     This court has jurisdiction over this action pursuant to 28 U.S.C §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. §§ 1983 and 1985.

32.     This Court has supplemental jurisdiction over plaintiff's claims arising under state and local law pursuant to 28 U.S.C § 1367(a)

**VENUE**

33.     Venue is properly assigned, U.S. District Court for the Southern District of New York pursuant to 28 U.S.C § 1391 (b), because the events or omissions giving to plaintiff's claim originated within this judicial district.

**PARTIES**

34.     Shantell Mckinnies is a retired veteran of the NYPD as of February 9, 2022. During plaintiffs seventeen year career, she received above average evaluations from her immediate supervisors and occupied the following positions: Youth Officer, Training Officer and NCO Officer. She is a United States Army Veteran, honorably discharged in 2003. Plaintiff was born and raised in Brooklyn, New York and furthered her education at St. Joseph's University Brooklyn campus. Furthermore, the plaintiff does not have **ANY** criminal record in the United States or abroad.

35.     Defendants City of New York, former Police Commissioner Keechant Sewell, NYPD Internal Affairs Bureau Commander, (IAB) Detective Mezchelyn Ellis, (IAB) Detective Andrew Fitgerald, (IAB) Detective Vanessa Delossantos, NYPD Psychologist Adam Bloom, Captain Kathleen Fahey, Lieutenant Hong Chen, NYPD Records Officer Katherine Obanhen, Police Officer Fabiana Canelliz, Police Officer Matthew Ficara, "John Doe and Jane Doe" 1 through 50. Defendants 1-50  are unknown police officers, acting under the color of state law. Office of the

Inspector General for (NYPD)- Investigator(s) Subir and Investigator Degraf. Defendant John Doe(s) and Jane Doe(s) Federal Bureau of Investigations (FBI).

36.    They are all being sued in both their individual and official capacity. The defendants, City of New York is a municipality in the state of New York and employs the defendants as police officers and investigators.

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) – 18 U.S.C. § 1961 et seq Claims

### RICO CLAIM ( 18 U.S.C § 1962 (c))

37.    Plaintiff brings this civil RICO claim under 18 U.S.C. §§ 1961–1968 against the named defendants, both named and unnamed, associated together to form an association-in-fact enterprise (the "Enterprise") within the meaning of 18 U.S.C. § 1961(4). The Enterprise was composed of individual NYPD officers, supervisors, affiliated actors, and outside collaborators who coordinated for the common purpose of: concealing official misconduct, misuse of the legal and investigative apparatus for personal protection, engaging in unlawful sub rosa investigations to silence critics through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

38.    The predicate acts of racketeering include repeated and coordinated violations of federal law, specifically: honest services fraud, in violation of 18 U.S.C. § 1346; mail fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation of 18 U.S.C. § 1343; obstruction of justice, in violation of 18 U.S.C. § 1503; retaliation against a witness or informant, in violation of 18 U.S.C. § 1513; and interstate stalking, in violation of 18 U.S.C. § 2261A. These acts were perpetrated under the guise of legitimate governmental functions, thereby concealing their unlawful nature and misleading both oversight bodies and the public.  Defendants John Doe(s) and Jane Doe(s), as "persons" within the meaning of 18 U.S.C. § 1961(3), and acting in concert with one another, associated together to form an unlawful association-in-fact enterprise, as defined in 18 U.S.C. § 1961(4). Acting individually and collectively under color of law, and by means of the defendant City's resources—including public infrastructure, municipal facilities, personnel, and financial assistance—the defendants facilitated, directed, and advanced the enterprise's affairs. These acts materially enhanced the enterprise's effectiveness, ensured its continuity, and enabled its operation as an ongoing and continuing association-in-fact enterprise, in violation of 18 U.S.C. § 1962(d).  The City of New York are alleged as components of the enterprise (and/or the enterprise's instrumentality), not as RICO "persons."

### I. Honest Services Fraud and Misuse of Federal Funds (predicate act)

39.    Defendants Doe(s) knowing and willfully devised and executed a scheme to defraud the public of the intangible right to honest services in violation of 18 U.S.C §§ 1341, 1343 and 1346. Specifically, they misappropriated funds by diverting them to compensate defendant(s) John Doe and Jane Doe for unauthorized directive and extrajudicial operations including interstate and international travel, under the false pretense of official duties. These acts represent a calculated abuse of public trust and a diversion of government resources toward unlawful

objectives. The defendant's motivation is to retaliate against dissent and discredit the plaintiff in an effort to suppress exposure of internal abuse and rampant misconduct.

40.     **TAKE Notice**, Plaintiff respectfully asserts that the supporting evidentiary materials are maintained within the custody and control of the defendants' Records Department. Plaintiff further requests that defendants be expressly prohibited from altering, destroying, or otherwise manipulating said materials. The withheld records identify, inter alia, specific names, roles, dates, times, and locations of predicate acts and participants in the conspiracy, and include the identities of the "John Doe" and "Jane Doe" defendants.

## II. Mail and Wire Fraud (predicate act)

41.     In furtherance of their scheme, defendants Doe(s) committed mail and wire fraud by transmitting false and misleading communications (including but not limited to emails, databases, and social media) targeting the plaintiff via municipal systems, inter-agency correspondence to the following: United States Postal Service, airlines, and maritime ports, electronic platforms, the Charlotte Police Department and other government agencies.  These communications were designed to fabricate the appearance of a legitimate investigation, gain unauthorized access to government resources, and induce compliance from third-party agencies, thereby violating 18 U.S.C. §§ 1341 and 1343.

42.     **TAKE Notice**, Government and commercial agencies—such as the United States Postal Service, airlines, and maritime ports—are commonly regarded as viable second-career opportunities for retired law enforcement personnel. The defendants, acting with deliberate intent, sought to damage the plaintiff's professional reputation and unlawfully cause injury to her "business or property and prospective economic opportunities. Their actions constituted a calculated effort at financial sabotage .

43.     **TAKE Notice**, Plaintiff respectfully asserts that the supporting evidentiary materials are maintained within the custody and control of the defendants' Records Department. Plaintiff further requests that defendants be expressly prohibited from altering, destroying, or otherwise manipulating said materials. The withheld records identify, inter alia, specific names, roles, dates, times, and locations of predicate acts and participants in the conspiracy, and include the identities of the "John Doe" and "Jane Doe" defendants.

## III.  Obstruction of Justice (predicate act)

44.     Defendants Police Commissioner Keechant Sewell and Captain Fahey, as sworn supervisory officers of the New York City Police Department, were duly notified of the misconduct of the named individual defendant(s).  Despite such notice, Sewell and Fahey negligently and deliberately failed to implement reasonable safeguards, corrective measures, or supervisory intervention to prevent the continuation of the misconduct. Their omissions directly and foreseeably left plaintiff vulnerable to ongoing constitutional deprivations, including unlawful surveillance, harassment, and retaliatory acts. By failing to intervene despite actual or constructive knowledge of their subordinates' unconstitutional conduct, Sewell and Fahey violated plaintiff's clearly established rights under the Fourth Amendment pursuant to 42 U.S.C. §§ 1983 and 1985.

45.    I.A.B officers Ellis, Fitzgerald, and DeLossantos engaged in a conspiracy to violate RICO through a "pattern of racketeering activity," which included deliberate mishandling of Internal Affairs complaints. Defendants, acting individually and under color of state law, failed to prevent known constitutional violations despite a duty to do so, ignoring NYPD protocols, obstructing oversight, abandoning investigations.

46.    **TAKE Notice**, Plaintiff respectfully asserts that the supporting evidentiary materials are maintained within the custody and control of the defendants' Records Department. Plaintiff further requests that defendants be expressly prohibited from altering, destroying, or otherwise manipulating said materials. The withheld records identify, inter alia, specific names, roles, dates, times, and locations of predicate acts and participants in the conspiracy, and include the identities of the "John Doe" and "Jane Doe" defendants.

47.    Plaintiff claims that the City of New York Records officers Katherine Obanhiem, Matthew Ficara, and Fabiana Canelliz, engaged in a conspiracy to violate RICO through a "pattern of racketeering activity, by conspiring to unlawfully withhold plaintiffs', disciplinary, investigative, personnel records for over three years in violation of the Fourteenth Amendment, 42 U.S.C. §§ 1983 and 1985, New York's Freedom of Information Law (FOIL), and state penal law. The defendants allegedly acted in bad faith to obstruct litigation by refusing to produce exculpatory materials—despite lawful requests in violation of Public Officers Law, Article 6, §§ 84–90,  the repeal of Civil Rights Law § 50-a—thereby committing official misconduct under N.Y. Penal Law § 195.00. (refer to: Ex. A)

48.    Defendants Doe(s) of the Legal Bureau deliberately disregarded their obligations to comply with a lawful request from the Equal Employment Opportunity Commission ("EEOC") with a Position-Statement addressing the plaintiff's allegations. Plaintiff contends that defendants' willful refusal to compy is further evidence of their bad faith pattern of conduct.

49.    Defendants' persistent and deliberate failure to engage in proper compliance procedures establishes a pattern of obstruction and evasion of accountability. Their noncompliance not only prejudices the plaintiff's statutory rights but also underscores their liability by demonstrating attempts to conceal material facts and to manipulate lawful processes to their advantage.

**Incident on or about May 22, 2025: Brooklyn Supreme Court**
50.    On or about May 21–22, 2025, defendant John Doe, acting individually, under color of law, surveilled plaintiff into 257 Nostrand Ave Brooklyn, NY 11216 (business-services store) where she notarized a motion response in her Article 78 proceeding (Index No. [#56-2025]) pending in Supreme Court, Kings County.

51.    On May 22, 2025, plaintiff filed a follow-up motion with the Kings County Clerk's Office at 360 Adams Street Brooklyn, New York. At the time of filing, "John Doe" was observed engaged in improper ex parte communications with court personnel to which plaintiff believes influenced the processing of plaintiff's filing, thereby obstructing judicial administration and depriving plaintiff of procedural due process.

52.      Approximately one week later, the Article 78 matter was marked dismissed by the Clerk's Office for "failure to appear," on June 4, 2025 despite the absence of any Court-ordered appearance date for plaintiff.  Plaintiff thereafter filed a **timely appeal** approximately 10 days later.  The Clerk's Office has failed to file, docket, or transmit plaintiff's appeal, causing delay and prejudice to plaintiff's rights.

53.      Plaintiff commenced a complaint with the New York State Attorney General and has received a written notice of redirection to the Inspector General Office.

54.      Defendant City, through its  counsel Kres & Flores, LLP,  engaged in dilatory tactics by impeding plaintiff's prosecution of this action by mishandling the statutory examination pursuant to N.Y. Gen. Mun. Law § 50-h.  Defendants unilaterally canceled the September 8, 2025 hearing without prior notice and offered no alternative dates. When plaintiff proactively contacted defendants to reschedule a replacement hearing, defendants deliberately withheld the confirmation they demanded as a precondition to proceeding, thus obstructing the examination set for September 12, 2025 and causing **unnecessary delay and prejudice to plaintiff.** (refer to: Ex. C.)

**IV.  Retaliation Against a Witness or Informant (predicate act)**

55.      At all relevant times, Lieutenant Hong Chen served as plaintiff's platoon leader and exercised direct supervisory authority over plaintiff.  Lieutenant Chen subjected plaintiff to ongoing micromanagement, verbal abuse, and repeated public humiliation in the presence of peers and subordinates.  In addition, Lieutenant Chen disproportionately assigned plaintiff heavier and more burdensome workloads compared to similarly situated co-workers, creating unequal conditions of employment.  Lieutenant Chen's conduct fostered and perpetuated a hostile and abusive work environment that lowered plaintiff's morale, impaired her ability to perform her duties, and isolated her from peers. Plaintiff duly reported Lieutenant Chen's conduct:  (a) **Verbally** to Captain Fahey, Chen's immediate superior; and (b) **In writing** to the U.S. Equal Employment Opportunity Commission ("EEOC").  Despite such reports, no meaningful remedial action was taken by Captain Fahey, thereby permitting the hostile work environment to persist. The EEOC commission issued plaintiff a Right to Sue letter.

56.      In addition, defendants Doe(s) of the NYPD Internal Affairs Bureau and Inspection Division subjected the plaintiff to repeated and baseless "integrity tests," unauthorized sub rosa investigations, and abusive disciplinary penalties. These actions were unlawfully recorded in her Central Personnel Index and investigation files, despite the defendants' failure to follow mandatory NYPD due process procedures, including holding a GO-15 departmental hearing, assigning a union attorney, and providing a written explanation of any charges or discipline. Essentially, unlawfully causing injury to her "business or property by loss of terminal leave approximately $20,000, NYC pistol licensing, and good guy letter a requirement for licensing.

57.      The Doe Defendant(s), acting individually and collectively under color of law, misused municipal systems, authority, and public resources to execute and/or ratify a retaliatory scheme

encompassing surveillance, threats, intimidation, and obstruction of grievance and court processes. The foregoing predicate acts and conduct were undertaken pursuant to, and perpetuated by, municipal policy, custom, practice, and ratification. Defendants' conduct directly and foreseeably caused injury to plaintiff's business or property, including but not limited to constructive discharge after seventeen years of service—three years short of her twenty-year retirement threshold—thereby causing loss of wages, loss of pension accruals and retirement benefits, diminished earning capacity, and other pecuniary damages.

**V. 9.35 Bivens Act**

58.     Plaintiff alleges that, as part of a convoluted and malicious effort to inflict severe emotional distress, NYPD defendants Doe(s), deliberately and unlawfully placed plaintiff on a Foreign Intelligence Surveillance Act ("FISA") watchlist for retaliatory purposes wholly unrelated to national security. Defendants exploited the secrecy and lack of oversight inherent in FISA proceedings to operate beyond the reach of federal, state, and local accountability, thereby mirroring the unlawful practices to psychologically, emotionally disable and discredit plaintiff allegations.

59.     Through this unlawful designation, defendants Doe(s)—including federal individual agents, NYPD individual agents, and other known and unknown individual agents— individually, acting under color of law, orchestrated continuous violations of plaintiff's constitutional rights. These violations included, but were not limited to:  Warrantless Entries – repeated unauthorized intrusions into plaintiff's home and vehicle;  Unauthorized Access – unlawful interception and review of plaintiff's communications, electronic data, and financial records;  Defamation & Smear Campaigns – dissemination of false and disparaging statements within plaintiff's community, among neighbors and other agencies to damage her reputation;  Psychological Manipulation – the use of intimidation, surveillance, and coercive tactics to erode plaintiff's sense of security and autonomy.  Defendants' misuse of FISA operations weaponized ordinary avenues of daily life against the plaintiff, embedding the surveillance into her community interactions and routine activities. As a result, plaintiff was placed in constant and direct harm, suffering continuous deprivation of her constitutional rights under the First, Fourth, and Fifth Amendments, enforceable pursuant to 42 U.S.C. §§ 1983 and 1985.

60.     Defendants, Doe(s) invoking the guise of national security authority, operated across multiple jurisdictions and territories without lawful restraint.  These intrusions were conducted in a calculated manner designed to alert plaintiff to their presence while remaining sufficiently discreet so that, if reported, plaintiff would be perceived as irrational or unreliable.

61.     Defendants knowingly colluded with, and acted through, an association-in-fact enterprise (the "Enterprise") whose common purposes included: concealing official misconduct, retaliating against and silencing plaintiff and other whistleblowers, obstructing administrative and judicial proceedings by suppressing material evidence and undue influence.

62.     In furtherance of the Enterprise, defendants invoked, cited, or otherwise leveraged the secrecy provisions and processes associated with the USA PATRIOT Act and the Foreign

Intelligence Surveillance Act ("FISA") to shield their conduct from scrutiny and to refuse or frustrate production of discoverable materials, communications, and records that plaintiff seeks in order to prove defendants' misconduct.

63.    Defendants' reliance on Patriot Act/FISA secrecy was **pretextual** and **not supported by any bona fide national-security need**. Instead, defendants used those mechanisms as an unlawful cloak to impede disclosure, evade accountability, and prevent meaningful judicial review of their actions.

64.    The misuse of Patriot Act/FISA secrecy not only injures plaintiff by depriving her of access to material evidence and effective remedies, but also poses a grave threat to the public at large by chilling the reporting of official wrongdoing and deterring others from petitioning the government or cooperating with oversight bodies.

65.    Defendants' conduct, including the coordinated assertion of secrecy and refusal to produce records, constitutes obstruction and unlawful interference with plaintiff's rights, and is consistent with the enterprise's ongoing pattern of racketeering and conspiracy.

66.    By weaponizing these clandestine operations, defendants deliberately fostered a pattern of psychological intimidation, impairing plaintiff's credibility, and obstructing plaintiff's ability to obtain redress through legitimate legal and administrative channels.

67.    By virtue of FISA's secrecy provisions, defendants have operated in the shadows, shielded from public scrutiny and legal exposure, leaving plaintiff without a meaningful avenue to seek removal, redress, or discovery of material evidence necessary to vindicate her rights. This systemic abuse has deprived plaintiffs of due process, equal protection, and fundamental constitutional safeguards, all under the guise of a federal statutory framework never intended for **retaliatory misuse**.

68.    **TAKE Notice**, Plaintiff respectfully asserts that the supporting evidentiary materials are maintained within the defendants custody and control within their respective agencies. Plaintiff further requests that defendants be expressly prohibited from altering, destroying, or otherwise manipulating said materials. The withheld records identify, inter alia, specific names, roles, dates, times, and locations of predicate acts and participants in the conspiracy, and include the identities of the "John Doe" and "Jane Doe" defendants.

## VI.  Interstate stalking (for context and continuity)
**TAKE Notice:** "John Doe and "Jane Doe" are duly sworn officers, acting individually and collectively, within their official capacities.
**Take Notice:** "Plaintiff is a seventeen (17)-year veteran of the New York City Police Department with knowledge and operational experience in law-enforcement procedures and tactics."
**TAKE Notice**: After plaintiff began documenting the license plate of the defendant's vehicle, defendants removed or obscured the permanent plate and substituted a paper or otherwise unidentifiable tags and dark tent to obscure their identities.

69.     Plaintiff relocated from New York City to Charlotte, North Carolina, after selling her residence, in an effort to reduce or eliminate the harassment and intentional infliction of emotional distress (IIED) perpetrated by defendants. The harassment had extended to plaintiff's family, friends, and co-workers who supported her.

70.     Despite plaintiff's relocation to another state, defendant(s) Doe, knowingly and willfully continued their course of conduct across state lines, in violation of 18 U.S.C. § 2261A, by utilizing instrumentalities of interstate commerce—including vehicles, electronic communications systems, and GPS tracking devices—to stalk, surveil, harass, and intimidate plaintiffs.

71.     Defendants intentionally traveled interstate commerce to engage in unlawful acts, including but not limited to: unlawful physical surveillance; unlawful electronic surveillance and interception of communications in violation of 18 U.S.C. § 2511; unauthorized GPS tracking; property damage, harassment, criminal trespass, surreptitious entry into and exit from plaintiff's residence; sabotage of internal reports within the Charlotte-Mecklenburg Police Department (CMPD); and persistent community base harassment calculated to cause substantial emotional distress and to place plaintiff in reasonable fear for her safety.

**Incident on or about February 19, 2022: Holiday Inn / Charlotte Police Dept**

72.     On or about February 19, 2022, John Doe (1) traveled interstate from New York City to Charlotte, NC, with the intent to intimidate, surveil, and harass plaintiff. Plaintiff was temporarily residing at the Holiday Inn, 230 North College Street, Charlotte, NC, pending the closing on her new home.

73.     On February 20, 2022, at approximately 6:00 a.m., plaintiff left her hotel room to retrieve items from her vehicle in the hotel garage. John Doe (1) followed her down a dark corridor with his face covered, causing plaintiff to fear for her safety.

74.     Plaintiff proceeded to the Charlotte-Mecklenburg Police Department (CMPD) station at 601 Trade Street. While en route, plaintiff observed a light-colored four-door sedan, operated by John Doe (2), tailing her.

75.     Upon arrival, plaintiff entered through the public security checkpoint, while John Doe (2) entered via a restricted law enforcement entrance. Desk Officer Glenn Artis refused to take plaintiff's report, despite her presentation of retired NYPD credentials, instructing her instead to "go back to the location and call 911." After waiting approximately two hours back at the hotel, Officer T.M. Snyder (#1862) responded and recorded the plaintiff using his body camera.

**Incident on or about March 3, 2022: Attempted Home Entry**

76.     On or about March 3, 2022 six days after closing on her new home, plaintiff's security cameras captured "John Doe" attempting to gain entry by pulling on the garage door handles. plaintiff asserts this act was directly connected to defendants' scheme of harassment.

**Incident on or about March 22, 2022: Retail Harassment**

77.     On or about March 22, 2022 John Doe and Jane Doe followed the plaintiff to multiple commercial establishments throughout Charlotte, North Carolina, falsely telling staff that plaintiff was shoplifting. This induced staff to treat the plaintiff as a suspected thief. Plaintiff reported the stalking to Officer P.B. Conner (#002123).

**Incident on or about June 27, 2022: Alteration Shop**

78.     On or about June 27, 2022 "John Doe" operated a silver toyota bearing North Carolina registration# DKJ-5676, within North Carolina jurisdiction. Defendant "John Doe" also wore a blue "color of the day" band around his right arm. "John Doe" tailed the plaintiff from her home to an alteration shop, at which time plaintiff recorded him.
[*A "color of the day" armband is used by the NYPD to identify plainclothes officers to uniformed officers on duty*.]

**Incident on or about August 12, 2022: Vehicle Interstate Surveillance**

79.     On or about August 12, 2022 "John Doe" operating a blue late model honda suv bearing New York registration# EAS-8885 followed the plaintiff from New York City to her family reunion in Ahoski North Carolina.

**Incident on or about August 28, 2022: Interstate Surveillance**

80.     On or about August 28, 2022 "John Doe" 1-2 traveled from New York City to North Carolina at such time he surveilled her at Cabos restaurant and a gas station near the plaintiff home.

**Incident on or about October 2, 2022: NYPD Vehicle Interstate Surveillance**

81.     On or about October 2, 2022  "John Doe" and "Jane Doe" traveled from New York City to Charlotte, NC, operating an unmarked NYPD Dodge Charger (NY plate #HZD-7323) equipped with a GPS tracker. While traveling through Virginia, plaintiff photographed the vehicle before it sped away along I-85 South. DMV records searches on such vehicles routinely return "no record found," consistent with NYPD Internal Affairs fleet practices.

**Incident on or about October 17, 2022: Concord Mills Mall**

82.     On or about October 17, 2022  "Jane Doe" (1), an NYPD Legal Bureau officer (known to plaintiff from a previous service of charge in 2011), traveled to Charlotte, NC, and stalked plaintiff throughout Concord Mills Mall and into a movie theater. Plaintiff associates "Jane Doe" (1) with a prior unlawful entry into her grandmother's home under false pretenses, during which she posed as a housing exterminator. Plaintiff and her 82 year old grandmother traveled outside of New York City shortly thereafter upon return discovered two dead mice affixed to a glue trap placed on her grandmother's sofa where the plaintiff slept.

**Incident on or about October 27, 2022: Walgreens in Hunterville N.C.**

83.     On or about October 27, 2022 "Jane Doe" (1) and Jane Doe (2) traveled interstate from New York to Charlotte, NC, stalking the plaintiff at a Walgreens near Huntersville, NC. "Jane

Doe" (1) remained in a burgundy SUV outside, while "Jane Doe" (2) surveilled plaintiff inside the store, falsely telling staff that plaintiff was shoplifting. This induced staff to treat the plaintiff as a suspected thief. "Jane Doe" (2) was operating a vehicle bearing NC plate #RAF-2610 and had previously surveilled plaintiff at a CVS in Queens, NY. Jane Doe (1) is the same defendant in paragraph (82)

**Incident on or about March 30, 2023: Highway 485 South**
84.     On or about March 30, 2023 "John Doe" followed plaintiff from a local dry cleaner, aggressively tailgating her on Highway 485 South while a passenger made menacing gestures. Plaintiff feared for her safety and reported the incident to Officer K. McClure of CMPD.

**Incident on or about February 28, 2024: Cartagena Columbia**
85.     On or about  February 28 2024 the defendants John Doe 1-5 with the intent to harass and annoy followed the plaintiff throughout the airport and on a flight to Cartagena, Columbia.

**Incident on or about March 2022 - September 2025: Brentwood Homes Community**
86.     On or about March 2022 through February 2025, defendants, acting in concert, occupied a residential rental at 2047 Darby View Lane, and 2051 Darby View Lane, Charlotte  North Carolina 28215, directly across from plaintiff's home. During this period, John Doe and Jane Doe defendants intentionally engaged in a persistent pattern of harassment, including: orchestrating coordinated "noise campaigns" intended to annoy, alarm and harass plaintiff, repeatedly trespassing upon plaintiff's property and damaging same, stalking conduct by driving past plaintiff's residence approximately 15–20 times per day, and surveillance.

87.     Additionally, upon information and belief, defendants—acting directly and in concert with persons known and unknown—have arranged for a rotating set of third parties to occupy the above neighboring residence at intervals of approximately four to six months. Each successive occupant has continued the same course of conduct: orchestrating noise campaigns; disseminating smear campaigns within the community; repeatedly trespassing onto plaintiff's property; causing property damage; and conducting coordinated surveillance, including the use of multiple vehicles that follow the plaintiff upon exiting her home and commencing various forms of harassing conduct along the roadway, within commercial establishments, and intimate locations for the plaintiff including hospitals and medical offices.

**Incident on or about September 3, 2025: Interstate Surveillance**
88.     On or about September 3, 2025, Defendants John Doe 1–4 and Jane Doe, did willfully and unlawfully engage in interstate surveillance and stalking of plaintiff. Defendants tailed and monitored plaintiff's movements beginning in New York City and continuing through interstate travel until last observed near the Virginia/North Carolina state line. Defendants operated multiple vehicles in coordinated pursuit, including: a silver four-door sedan occupied by John Doe(1) and John Doe (2); a black BMW sport utility vehicle occupied by John Doe (3); and a grey four-door Toyota sport utility vehicle occupied by Jane Doe and John Doe (4).

89.     The coordinated use of multiple vehicles across state lines constitutes an intentional **pattern** of surveillance and harassment, placing plaintiff in direct apprehension of harm and establishing predicate acts under 18 U.S.C. § 2261A (interstate stalking), as well as evidence of racketeering activity in violation of 18 U.S.C. §§ 1961–1968. **These incidents have been properly recorded and documented for discovery.**

90.     Defendants' actions constitute a "course of conduct" within the meaning of 18 U.S.C. § 2261A(2), undertaken with the intent to kill, injure, harass, and intimidate the plaintiff, and causing substantial emotional distress. Plaintiff seeks damages, injunctive relief, punitive damage and all remedies available under 18 U.S.C. § 2264, as well as state law claims for IIED.

## OVERVIEW OF RICO CLAIM (18 U.S.C. § 1962(c))

91.     Defendant(s), acting individually and collectively, knowingly formed and participated in an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4). The enterprise consisted of current and former members of the New York City Police Department ("NYPD"), their supervisors, and affiliated actors, who functioned as a continuing unit with a shared purpose of retaliating against plaintiff for whistleblowing activities and legal actions, and concealing official misconduct. The enterprise operated through NYPD's internal hierarchy, abusing departmental resources, personnel, and public funding to achieve its objectives, including the fraudulent use of unmerited overtime payments to finance, reward, and conceal unlawful conduct.

## Plaintiff's Allegations of Constitutional Violations and RICO Conspiracy

92.     Plaintiff alleges that Defendants City of New York (NYPD) and Keechant Sewell, Mezchelyn Ellis, Andrew Fitzgerald, and Vanessa DeLossantos, acting under color of state law, deprived her of rights secured by the Fourth Amendment to the United States Constitution by failing to intervene and prevent known constitutional violations as required by law.

## Incident(s) on or about February 2022-2025: Sabotage Complaints / Failure to Intervene

93.     Further, Defendants Mezchelyn Ellis, Andrew Fitzgerald, and Vanessa DeLossantos, each of whom held positions as Internal Affairs Bureau (IAB) officers within the New York City Police Department (NYPD), knowingly and willfully conspired amongst themselves and with other co-conspirators, both known and unknown, to violate 18 U.S.C. § 1962(c). This was effectuated through a pattern of racketeering activity which included, but was not limited to, the deliberate disregard of NYPD rules, procedures, and oversight mechanisms governing complaints submitted to the IAB, including those brought by the plaintiff.

94.     Defendant Keechant Sewell, in her official capacity as Police Commissioner, was duly placed on notice by the plaintiff (via email) regarding the alleged misconduct committed by individuals associated with the enterprise's unlawful objectives. Although defendant Sewell initially assigned defendant Vanessa DeLossantos to conduct an investigation into the plaintiff's allegations, she resigned from her post without implementing any safeguards or protective measures to mitigate the harm being inflicted upon the plaintiff. Subsequent to Sewell's

resignation, defendant DeLossantos ceased all communications with the plaintiff, thereby abandoning the investigatory process and leaving the plaintiff vulnerable to ongoing harm.

95.     Defendant Andrew Fitzgerald initiated contact with the plaintiff following her submission of a complaint to Internal Affairs. During a phone conversation, defendant Fitzgerald used language evidencing hostility and contempt, and thereafter terminated all communication with the plaintiff. Similarly, defendant Mezchelyn Ellis contacted the plaintiff following her complaint to Internal Affairs, but ceased all communication after a single phone call.

96.     As a matter of well-established federal constitutional law, including precedent under 42 U.S.C. § 1983, law enforcement officials have an affirmative duty to intervene when they are aware of constitutional violations being committed by other officers. The failure of the aforementioned defendants to act upon such knowledge constitutes a direct and proximate cause of the constitutional injuries sustained by the plaintiff.

97.     Plaintiff alleges that defendants City of New York (NYPD) **Inspector General office** Investigators SUBIR and DEGRAF, acting under color of state law, deprived her of rights secured by the Fourth Amendment to the United States Constitution by failing to intervene and prevent known constitutional violations as required by law.

**Incident on or about October 2022-2025: Sabotage Compliant(s) / Failure to Intervene**
98.     Plaintiff alleges that defendants City of New York, Investigator(s) SUBIR and DEGRAF acting under color of state law, deprived her of rights secured by the Fourth Amendment to the United States Constitution by failing to intervene and prevent known constitutional violations.

99.     Both Investigator(s) SUBIR and DEGRAF are employed by defendants CITY,  Inspector General Office of (NYPD). On or about October 2022, plaintiff reported said violations to Investigator Subir and Investigator Degraf at the New York Office of the Inspector General, located at 180 Maiden Lane, New York, NY 10038.

100.     Following plaintiff's disclosure, individuals identified herein as John Doe 1 through 3 engaged in surveillance of plaintiff at or near the aforementioned location and were subsequently observed communicating with Investigators Subir and Degraf.

101.     Upon the conclusion of the initial interview, Investigator Subir advised plaintiff to "go get an attorney." When plaintiff later returned with additional evidentiary material, Investigator Subir dismissed plaintiff's concerns and directed her to vacate the premises and later followed up with a letter indicating their office would not be investigating plaintiffs claims. (see:Ex. I.)

102.     Plaintiff alleges that Defendants CITY of New York (NYPD) Record Officers, KATHERINE OBANHIEM, MATTHEW FICARA and FABIANA CANELLIZ, acting individually, under color of state law, deprived plaintiff of her rights secured by the FOURTEENTH Amendment to the United States Constitution (42 U.S.C §1983) by intentionally and recklessly withholding of evidence.

103.    Defendants KATHERINE OBANHIEM, MATTHEW FICARA, and FABIANA CANELLIZ, acting under color of state law and in their official capacities as records officers for the CITY, knowingly and willfully conspired among themselves and with others, both known and unknown, to unlawfully **withhold evidentiary material from the plaintiff in bad faith**. Their actions were designed to delay, obstruct, and/or frustrate plaintiff's legal claims and ongoing litigation.

104.    On or about April 4, 2025, defendants OBANHIEM, FICARA, and CANELLIZ, in their capacity as the CITY's designated records officers and/or FOIL appeals officers, **failed to produce requested records on the agreed-upon date**, despite repeated requests and representations made to the plaintiff. The requested documents had been withheld from the plaintiff for a period exceeding three years.

105.    The defendants' **retaliatory denial** and continued **concealment of exculpatory, relevant, and material records**—specifically pertaining to the plaintiff's Central Personnel Index (CPI), Internal Affairs Bureau (IAB) records, Inspection Division files, ECMI investigative notes, and the fanciful complaints of misconduct—constitutes bad faith obstruction and is unlawful under applicable state and federal statutes.

106.    Plaintiff made a proper and lawful request under New York's Freedom of Information Law (Public Officers Law §§ 84–90), seeking her individual personnel and disciplinary records. Said requests were improperly denied without legal justification, in contravention of FOIL obligations, and in disregard of the statutory repeal of Civil Rights Law § 50-a as of June 12, 2020.

107.    Defendants, as duly sworn public officers, knowingly disobeyed laws related to their official duties, specifically those concerning compliance with F.O.I.L, and thereby committed acts constituting *Official Misconduct* in violation of New York Penal Law § 195.00. (refer to: Ex.A.)

**Incident on April 13, 2021: NYPD Psych Unit Abuse**
108.    On or about April 13, 2021, the Plaintiff was referred to Dr. Adam Bloom, a psychologist employed by the NYPD Psychological Services Unit, without proper legal or ethical justification. On that date, the plaintiff reported to the NYPD Medical Division at 9 Bond Street for treatment related to symptoms of hypertension. While there, Sergeant "John Doe," acting under color of law and without due cause, directed the plaintiff to report immediately to the department's Psychological Services Unit.

109.    At that time, the plaintiff was made to feel mentally unfit, as Dr. Bloom posed personal and accusatory questions more consistent with a formal investigatory or departmental hearing. Dr. Bloom further recorded the session using an audio recording device commonly used during official GO-15 disciplinary interviews, absent any informed consent from the plaintiff.

110.    Dr. Bloom knew or reasonably should have known that his actions exceeded the scope of his professional and departmental duties and violated both federal HIPAA privacy laws and internal NYPD policies. HIPAA regulations require that a healthcare provider obtain the patient's explicit written authorization before any recording of a medical session. This conduct is indicative of a broader, unlawful departmental practice of retaliating against individuals who

raise concerns or report misconduct by branding them as psychologically unstable in an effort to discredit and silence them.

**Incident on July 19, 2021: Roberta Owens / Invasion of Privacy**
**TAKE notice:** Roberta Owens was hired by the plaintiff as her personal counselor.
111.     On or about July 19, 2021, John Doe (1) and/or John Doe (2), operating a silver unmarked NYPD vehicle bearing New York registration #KKR-3874, tailed the plaintiff from her residence to 45 Margaret Drive, Coram, New York. The defendant's course of retaliatory conduct has been a consistent concern for approximately 15 years of the plaintiff's employment compelling her to seek professional counseling with Roberta Owens.

112.     Following one of the plaintiff's counseling sessions, John Doe (1) and/or John Doe (2) approached Roberta Owens, and solicited her to surreptitiously record the plaintiff during future counseling sessions. Such solicitation, if acted upon, would have violated plaintiffs constitutional right to privacy.

113.      Defendants' actions were intentional, outrageous, and undertaken under color of state law, constituting violations of 42 U.S.C. § 1983, 42 U.S.C § 1985 and supporting claims for diminished quality of life, Intrusion Upon Seclusion, and Intentional Infliction of Emotional Distress.

**Incident on June 28, 2019: Discriminatory Discipline**
114.     On or about June 15, 2021, Plaintiff was served with departmental charges arising from an incident on June 28, 2019 involving her use of pepper spray. Defendants, acting knowingly and willfully, violated *§§ 75 and 76 of the New York Civil Service Law and 318-04* of the NYPD Administrative Guide by excluding plaintiff from the fact-finding process, failing to provide required notice, representation, or an opportunity to accept a penalty disposition or challenge the charges, and by denying her a full departmental trial.

115.     Defendants further failed to forward the Charges and Specifications to plaintiff's union attorney, as required, and willfully disregarded the statutory 18-month limitations period for adjudicating departmental charges. Instead, the matter remained unresolved for nearly five years, until it was administratively closed in April 2024.

116.     This deliberate delay was intended to deprive Plaintiff of her $20,000 terminal leave payout and the issuance of a "good guy" letter, thereby obstructing her ability to obtain a pistol permit in NYC. Under *Patrol Guide § 205-42*, Defendants had discretion to expedite and adjudicate the charges before her retirement but intentionally failed to do so.

117.     The "pepper spray" charges were exploited as a pretext to retaliate against the plaintiff in violation of *New York Labor Law § 740.* At the time of the underlying incident, plaintiff had been reassigned to McCarren Park Public Pool, 776 Lorimer Street, due to escalating violence in the area.

**Incident on or about January 2019 - December 2025: Micheal Digillo / Defamatory Act**
**TAKE notice**: Micheal Digillo is a retired member of the NYPD and former neighbor of plaintiff for approximately twelve years.

118.     "John Doe" and "Jane Doe" 1 through 5 misrepresented themselves claiming to be conducting a lawful investigation against the plaintiff following Micheal Digillo observation of the defendants repeated instances of surreptitious entering and exiting at plaintiff's residence.

119.     Under this pretense, they solicited the neighbors' cooperation to unlawfully obtain privileged and private information regarding the plaintiff, all without her knowledge or consent.

120.     In furtherance of this scheme, Michael Digilio surveilled portions of the plaintiff's property not otherwise accessible to the general public. Notably, this is unlawful surveillance and collection of personal information.

**Incident on or about February 2022 - August 2025: Hector Santiago / Defamatory Act**
**TAKE notice:** Hector Santiago is a resident of Charlotte, NC and plaintiff's current neighbor.

121.      "John Doe" and "Jane Doe" 1 through 9 misrepresented themselves claiming to be conducting a lawful investigation against the plaintiff following Hector Santiago observation of the defendants repeated instances of surreptitious entering and exiting at plaintiff's residence.

122.     Under this pretense, they solicited the neighbors' cooperation to unlawfully obtain privileged and private information regarding the plaintiff, all without her knowledge or consent.

123.     In furtherance of this scheme, Hector Santiago photographed the plaintiff's outgoing and incoming mail and package shipping labels, Notably, this is unlawful surveillance and collection of personal information.

124.     **TAKE Notice:**  Plaintiff was actively seeking cooperation through sworn witness affidavits in order to document and memorialize defendants' unlawful conduct, defendants intentionally and unlawfully interfered with the fact-finding process. Specifically, defendant(s) Doe, coerced, and/or improperly influenced witnesses, Michael Digilio, Hector Santiago, and Monique Lovell by pressuring them to alter their truthful accounts and  or from providing personal witness statements to the plaintiff. As a direct result of defendants' actions, these witnesses were caused to retract, distort, or withhold critical information, thereby undermining the integrity of the evidentiary record and obstructing the plaintiff's ability to secure material testimony in support of her claims.

**Incident on or about February 2022 - August 2025**: **Community Harassment**
TAKE notice: John Doe is the plaintiff Neighbor residing at 2046 Darby View Lane

125.     As a direct and foreseeable result of defendants' defamatory statements, a formerly cordial neighbor ("John Doe") began participating in targeted harassment of plaintiff. On multiple occasions, when plaintiff sat outside her home, John Doe deliberately activated a yard blower

and allowed it to run for extended periods—often until plaintiff retreated indoors—despite no bona fide yard work, with the intent to annoy, harass, and interfere with plaintiff's quiet use and enjoyment of her residence.

**Incident on or about January 2019 - August 2025: Mail Tampering & Harassment, Airport and Airline disinformation**

126.    The defendant(s) Doe, knowingly and willfully circulated forged correspondence and disseminated false information concerning the plaintiff to various commercial and federal mail carriers, including but not limited to the United States Postal Service (USPS), United Parcel Service (UPS), FedEx, and Amazon.

127.    As a direct and proximate result of these unlawful acts, the plaintiff has repeatedly experienced irregularities with her mail, including correspondence arriving opened, tampered with, missing, or inexplicably redirected.  Plaintiff experienced the same mail interference at her New York City residence at 89-34 Moline st Queens Vge, NY and now at the current residence in North Carolina.  Their actions violate 18 U.S.C § 1341 mail fraud.

128.    Further, the defendant(s) Doe, extended this campaign of disinformation to local airports, airline personnel, and hotels utilizing both internal and external communication channels to circulate forged documents and defamatory statements concerning the plaintiff. Consequently, the plaintiff has been subjected to repeated, unwarranted, and humiliating scrutiny during travel, despite having successfully passed all background checks associated with airport security clearance and expedited screening programs. Their actions are in direct violation of 49 U.S.C § 463114 (entering into aircraft or airport areas in violation of security), 18 USC § 1001 (false statements to federal agents or agencies) and 18 U.S.C § 241 (conspiracy to injure oppress threaten or intimidate).

129.    **TAKE Notice**, Plaintiff respectfully asserts that the supporting evidentiary materials are maintained within the defendants custody and control within their respective agencies. Plaintiff further requests that defendants be expressly prohibited from altering, destroying, or otherwise manipulating said materials. The withheld records identify, inter alia, specific names, roles, dates, times, and locations of predicate acts and participants in the conspiracy, and include the identities of the "John Doe" and "Jane Doe" defendants.

**Incident on or about October 9, 2024: Financial Sabotage at Banking institutions**

130.    On or about October 9, 2024, at approximately 1300 hours, Defendant "John Doe", acting with full intent to harass, intimidate, and cause financial sabotage, entered the MCU Credit Union branch located at 1660 Hempstead Turnpike, Elmont, New York. While the plaintiff was in the process of completing a loan application, Defendant John Doe falsely informed the Assistant Manager that the plaintiff was under investigation.

131.    This same conduct had previously occurred at a Chase Bank branch located at 5618 Albemarle Road, Charlotte, North Carolina, at which time the teller refused to release funds from