UNITED STATES DISTRICT COURT
Southern District of New York
_____X

In the Matter of the Application of

SHANTELL McKINNIES,                                    **AMENDED COMPLAINT**

Plaintiff,                                             Civil Action No: 25-cv-07968

-against-                                              Jury Trial Demanded:  ■ Yes ☐ No

THE CITY of NEW YORK,
                                               ,
NYPD: Keechant Swell, Internal Affairs Commander,
Mezchelyn Ellis, Andrew Fitzgerald,
Vanessa Delossantos, Hong Chen,
Kathleen Fahey, Matthew Ficara,
Fabiana Canelliz, Katherine T. Obanhein,
Adam Bloom,

Dept of Investigation:  Investigator Subir,
 Investigator Degraf,

"Jane Doe" and "John Doe"  inclusive,
the names of the last defendants have
been withheld, the true names of the
defendants are unknown to the plaintiff.

Defendant(s)
_____X

Plaintiff Shantell Mckinnies is a Pro-Se Litigant, and for this action, alleges as follows:

**Preliminary Statement**

1.      Plaintiff pleads certain events occurring prior to September 25, 2022 solely as background relevant to motive, intent, notice, and context. Plaintiff does not seek to relitigate claims adjudicated in prior proceedings and does not seek damages for discrete pre–September 25, 2022 acts to the extent time-barred. Plaintiff seeks relief based on defendants' actionable conduct and resulting injuries occurring within the limitations period and continuing thereafter.

2.      *For context / background only,* This action arises from a multi-year pattern of retaliation and concealment by City of New York employees and agents associated with the NYPD.

1

Plaintiff alleges that the retaliatory course of conduct described herein began after Plaintiff made internal complaints of racially discriminatory treatment by a well-regarded supervisor in or about 2007. Following that, Plaintiff further alleges that an off-duty dispute with a former partner concerning a vehicle Plaintiff had financed was already documented within the NYPD complaint system. Plaintiff alleges the NYPD weaponized that preexisting incident as a pretext to effect her arrest in retaliation for her complaints and to jeopardize her employment. Plaintiff alleges the matter was later dismissed and sealed, and that a settlement was reached. Plaintiff pleads these allegations solely as background relevant to motive and context and not as independent bases for damages to the extent time-barred. (See Ex.1 [disposition, settlement].)

3.      This action arises from a long pattern of retaliation and obstruction by City of New York employees and agents associated with the NYPD, including interference with Plaintiff's ability to obtain redress and to identify responsible actors. Plaintiff's claims are supported by objective post–September 25, 2022 events and records, including, among other things, documented home-security system anomalies (Sept. 27, 2022), provider event-history records (June 17, 2023), written notice to NYPD leadership (Apr. 26 and May 4, 2023), and written records-correspondence reflecting delayed/nonproduction of requested materials (Dec. 12, 2024 correspondence and nonproduction on or about Apr. 4, 2025).

4.      Plaintiff further alleges that defendants obstructed accountability and delayed redress by withholding and controlling access to critical records that identify participants and document misconduct, including personnel, disciplinary, and investigative materials. Plaintiff alleges that City records officers—identified herein—failed to produce agreed-upon materials on or about April 4, 2025, after withholding relevant records for three years.

5.      Plaintiff alleges that defendants delayed and impeded accountability by withholding or delaying access to records within defendants' control—particularly personnel, disciplinary, and investigative materials—despite written acknowledgments and stated processing timelines, thereby impairing Plaintiff's ability to identify John/Jane Doe defendants and to plead individual roles with greater specificity. Plaintiff does not assert a standalone FOIL cause of action; the records withholding is pleaded as evidence relevant to Plaintiff's retaliation and municipal-liability theories and to explain the present use of Doe defendants.

6.      Plaintiff alleges concrete economic and professional harm, including approximately $20,000 in terminal-leave related loss, 480,000 loss earnings, diminished employment-related documentation, licensing-related benefits, diminished earning capacity,reduced pension earnings, relocation and security expenses, and other out-of-pocket mitigation costs, in amounts to be proven. Plaintiff further alleges that defendants' actions interfered with prospective employment opportunities by causing third parties to treat Plaintiff adversely based on false or misleading sub rosa "investigation" assertions and related communications.

7.      Plaintiff asserts claims under 42 U.S.C. § 1983 against individual defendants based on personal involvement in retaliatory and obstructive acts under color of state law, and asserts a

Monell claim against the City based on policy, custom, practice, deliberate indifference, and/or ratification that allegedly enabled continuation of the misconduct after notice.
Plaintiff reserves the right to seek leave to amend under Fed. R. Civ. P. 15(a)(2) to substitute the true names of Doe defendants and to conform the pleadings to evidence obtained through third-party records and discovery.

8.      Plaintiff alleges her claims are timely under federal accrual principles because actionable events and injuries occurred within the limitations period and, in addition, Plaintiff alleges that key identifying facts were delayed by records withholding and concealment.

**TABLE OF CONTENTS**

| **Heading** | **Page#** |
|---|---|
| Preliminary Statement | 1 |
| Nature of Action | 5 |
| Jurisdiction | 5 |
| Venue | |
| Parties | 5 |
| First Amendment Retaliation ( 42. U.S.C §§ 1983 and 1985 ) | |
| Fourth Amendment ( 42. U.S.C §§ 1983 ) | |
| Fourteen Amendment  (42. U.S.C §§ 1983 ) | |
| Monell Liability ( 42. U.S.C §§ 1983 ) | |
| Factual Allegations Common to  Causes of Action | 6 |
| Cause of Action | |
|     Count I – First Amendment Retaliation ( 42. U.S.C §§ 1983 and 1985 ) | 20 |
|     Count II – Fourth Amendment ( 42. U.S.C §§ 1983 and 1985) | 21 |
|     Count III – Due Process  (42. U.S.C §§ 1983 and 1985) | 22 |
|     Count IV– Monell Liability ( 42. U.S.C §§ 1983 ) | 23 |
|     Count V – State Tort: Defamation | 23 |
| Prayers For Relief | 24 |
| Exhibit List | 25 |

**NATURE OF THE ACTION**

9.      This is a civil rights action seeking redress for the deprivation of rights secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution, committed under color of state law. Plaintiff brings claims pursuant to 42 U.S.C. §§ 1983 and 1985 against the individual defendants and asserts municipal liability against the City of New York under Monell for policies, customs, practices, and/or deliberate indifference that were the moving force behind the constitutional violations alleged.

10.      Plaintiff seeks compensation for injuries and losses proximately caused by defendants' conduct, including economic harm (lost income and employment-related benefits), out-of-pocket mitigation costs, and other compensable damages. Plaintiff seeks compensatory damages, punitive damages against the individual defendants where legally available, declaratory relief, and narrowly tailored injunctive relief to prevent ongoing retaliation, unlawful intrusions, and interference with evidence and records, and such other relief as the Court deems just and proper.

**JURISDICTION**

11.      This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including claims brought pursuant to 42 U.S.C. §§ 1983 and 1985.

12.      This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy as Plaintiff's federal claims.

**VENUE**

13.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District, including events involving the NYPD and the City of New York.

**PARTIES**

14      Plaintiff Shantell McKinnies is a retired officer of the New York City Police Department, retired on February 9, 2022. Plaintiff held assignments including Youth Officer, Training Officer, and NCO Officer. Plaintiff is a United States Army veteran, honorably discharged in 2003. Plaintiff was born and raised in Brooklyn, New York. Plaintiff does not have a criminal record.

15.      Defendant City of New York is a municipal entity organized under the laws of the State of New York and is responsible for the operation of the New York City Police Department ("NYPD"). The City is sued for municipal liability pursuant to Monell v. Dep't of Soc. Servs., 436

U.S. 658 (1978).

16.    Individual Defendants (City/NYPD) are current and/or former NYPD employees, sued in their individual capacities, including: former Police Commissioner Keechant Sewell; Captain Kathleen Fahey; Lieutenant Hong Chen; NYPD psychologist Adam Bloom; Internal Affairs Bureau personnel Mezchelyn Ellis, Andrew Fitzgerald, and Vanessa DeLossantos; records officers Katherine Obanhiem, Matthew Ficara, and Fabiana Canelliz; and Inspector General investigators Subir and Degraf.

17.    Doe Defendants. Plaintiff also sues John Doe and Jane Doe defendants, whose identities are presently unknown, who acted under color of state law and participated in the conduct alleged herein.

18.    Unless otherwise specified, each Individual Defendant is sued in his or her individual capacity for actions taken under color of state law. The City's liability is asserted solely under Monell and not under a theory of respondeat superior.

## FACTUAL ALLEGATIONS

19.    Plaintiff does not seek to relitigate claims previously adjudicated; Plaintiff pleads earlier events only as background relevant to motive, notice, and pattern."

**Records Withholding and Nonproduction (FOIL / RAO Timeline; April 4, 2025)**

20.    Plaintiff submitted requests for her NYPD personnel, disciplinary, and investigative records through written requests pursuant to New York's Freedom of Information Law ("FOIL"), including records relevant to Plaintiff's CPI, IAB, and Inspection Division files.

21.    By letter dated December 12, 2024, the NYPD Office of the Deputy Commissioner–Legal Matters (FOIL Appeals) responded to Plaintiff regarding FOIL Request No. FOIL-2024-056-33137, stating that Plaintiff's appeal was "premature" because the Records Access Officer ("RAO") had not yet issued a determination on the underlying request and, therefore, the appeal lacked a "predicate denial." The letter further stated that the RAO had acknowledged receipt and estimated an approximate timeframe for completion.

22.    The December 12, 2024 letter reflects that, on or about November 20, 2024, the RAO acknowledged Plaintiff's request and provided an approximate determination date of approximately 90 business days, identified as on or about April 4, 2025, based on the volume of documents and the complexity of review. (See Ex. 2 [ agreement, denials lettrs ].)

23.    Plaintiff alleges that notwithstanding the above representations and Plaintiff's follow-up efforts, defendants Katherine Obanhiem, Matthew Ficara, and Fabiana Canelliz, acting under color of state law in records/FOIL-related roles, failed to produce the requested categories of

6

records on or about April 4, 2025 and continued to withhold or delay production thereafter.

24.     Plaintiff alleges that the withheld materials include records that would identify the names, assignments, and roles of individuals involved in the conduct alleged herein, including the identities of John/Jane Doe defendants. Plaintiff further alleges that the continued withholding and delay materially impaired her ability to plead individual involvement with greater specificity, to pursue timely administrative and judicial relief, and to obtain meaningful redress.

25.     Plaintiff pleads these facts as evidence of retaliatory obstruction and interference with access to lawful processes and as support for municipal liability under Monell (including notice and failure to implement corrective measures). Plaintiff does not bring this action to challenge the merits of a FOIL determination as a standalone claim.

**50-h Examination Scheduling, Unilateral Adjournment, and "File Access Closed" Explanation (September 2025)**

26.     On September 5, 2025, counsel for the City (Krez & Flores, LLP) emailed Plaintiff to confirm a statutory examination pursuant to N.Y. Gen. Mun. Law § 50-h scheduled for Monday, September 8, 2025, at 1:00 p.m., referencing Claim No. 2025LE017370, and requested confirmation. (See Ex.3 [emails, notices].)

27.     Plaintiff confirmed her intent to appear for the September 8, 2025 examination.

28.     Plaintiff alleges that, despite her confirmation, the City unilaterally adjourned/canceled the September 8, 2025 examination without providing Plaintiff a written cancellation notice or alternative dates at that time. Plaintiff promptly sought rescheduling.

29.     The examination was thereafter rescheduled for September 12, 2025, at 1:00 p.m., and Plaintiff confirmed availability for the rescheduled date.

30.     Plaintiff alleges that as the rescheduled date approached, the City did not provide confirmation and/or logistics necessary to proceed, despite follow-up communications seeking confirmation.

31.     In an email dated September 12, 2025, Curtis Jackson of Krez & Flores, LLP stated, in substance, that there was an issue because the Comptroller's Office had assigned counsel the claim for purposes of the § 50-h hearing, but counsel attempted to access the file and "no longer had access" (i.e., counsel's access to the file had been closed). Mr. Jackson further stated he contacted the Comptroller's Office to determine what happened and would provide an update, and that once access was resolved the matter could be placed back on counsel's calendar.

32.     Plaintiff alleges that notwithstanding the representation that counsel would follow up, the City did not provide a timely explanation or rescheduled date after Plaintiff's additional inquiries,

resulting in delay and uncertainty in the processing of Plaintiff's claim.

33.     Plaintiff pleads these facts as evidence of delay and non-responsiveness in the handling of Plaintiff's lawful claims process and as part of the broader *pattern of interference and obstruction alleged herein.* Plaintiff does not allege defendants were constitutionally required to conduct a § 50-h examination; rather, Plaintiff alleges that the City's unilateral adjournment after confirmation and subsequent failure to proceed—while stating its access to the file had been closed—contributed to delay and prejudice and supports Plaintiff's retaliation and Monell theories.

**Court-Filing Interference and Resulting Prejudice (Article 78 Proceeding) May 21–June 4, 2025**

34.     On or about May 21–22, 2025, Plaintiff was in Brooklyn, New York, in connection with filings in her Article 78 proceeding pending in Supreme Court, Kings County (Index No. 56/2025). Plaintiff notarized a motion response at or near 257 Nostrand Avenue, Brooklyn, New York. Plaintiff alleges that during this timeframe she observed an unidentified male ("John Doe"), dressed in plain clothes, monitoring her movements.

35.     On May 22, 2025, Plaintiff filed a follow-up motion at the Kings County Clerk's Office, 360 Adams Street, Brooklyn, New York. While Plaintiff's filing was being processed, Plaintiff observed the same unidentified individual in proximity to court clerk staff and observed him engage in communications with court personnel. Plaintiff could not identify the individual by name and pleads this fact based on her contemporaneous observations.

36.     On or about June 4, 2025, the Article 78 matter was marked dismissed for "failure to appear," notwithstanding Plaintiff's understanding that no court-ordered appearance date had been set. Plaintiff thereafter took steps to pursue appellate review. Plaintiff alleges that the handling of her filing and subsequent appellate processing resulted in delay and prejudice to her ability to obtain timely judicial review.

37.     Plaintiff timely filed a Notice of Appeal. Although Plaintiff understood that the appeal would ordinarily proceed through transmission from the Kings County Supreme Court, Plaintiff also sent the appellate materials directly to the Appellate Division by certified/registered mail as a precaution. The Appellate Division received the submission and reflected the matter as pending receipt of the lower-court transmittal; however, the lower-court transmittal did not occur, and the matter was subsequently removed from the appellate docket. Plaintiff's mailing and delivery confirmations are attached. (See Ex. 4 [ Appellate Documents, Complaint].)

38.     Plaintiff pleads these allegations as part of her First Amendment petitioning / access-to-courts theory

39.     Plaintiff filed a complaint with the New York State Commission on Judicial Conduct, and received written acknowledgement of receipt dated November 21, 2025.

**Report to OIG-NYPD and Written Declination**

40.    On or about September 30, 2022, Plaintiff submitted a written complaint to the Office of the Inspector General for the NYPD ("OIG-NYPD") regarding the misconduct and retaliatory conduct alleged herein.

41.    In a written response dated October 13, 2022, OIG-NYPD acknowledged receipt and stated that it had reviewed Plaintiff's complaint, but determined it would not "specifically investigate" the matter at that time and would retain a record of the complaint for informational purposes. The letter further stated that if Plaintiff wished to pursue the matter, she "may want to retain an attorney" to discuss other options. (See Ex.5 [ letter].)

42.    Plaintiff pleads the OIG-NYPD complaint and written response not as an independent basis for liability, but as evidence that City oversight channels received notice of Plaintiff's allegations and that, notwithstanding that notice, the conduct Plaintiff reports continued thereafter.

43.    Plaintiff alleges that the absence of meaningful corrective action following her report is relevant to her municipal liability claim, including whether the City maintained customs, practices, or deliberately indifferent oversight failures that permitted continued retaliation, records obstruction, and other constitutional violations alleged herein. The OIG-NYPD correspondence is also relevant to Plaintiff's allegation that she pursued available reporting channels in good faith prior to and during the continuation of the events alleged in this action.

**Disciplinary Charges Remained Pending and Were Administratively Closed (April 2024) — Continuing Economic Harm ( PART context / motive - actionable / injury)**

44.    On or about June 15, 2021, Plaintiff was served with NYPD disciplinary Charges and Specifications arising from an incident on June 28, 2019 involving Plaintiff's use of pepper spray. Plaintiff alleges that the charges remained pending through Plaintiff's retirement on February 9, 2022 and were not adjudicated prior to her separation.

45.    Plaintiff alleges that the continued pendency of the charges carried practical consequences for her separation and post-employment standing, including the processing of separation-related documentation and benefits.

46.    The disciplinary matter was ultimately administratively closed in or about April 2024, as reflected in the NYPD closure documentation. (See Ex.6 [closure document] pg.24.)

47.    Plaintiff alleges that the prolonged pendency and delayed closure of the charges—followed by administrative closure in April 2024—functioned as a retaliatory and punitive use of departmental process and contributed to concrete economic harm, including interference with Plaintiff's receipt of approximately $20,000 in terminal leave payout and the

issuance of customary separation documentation (including a "good guy" letter) relevant to Plaintiff's ability to pursue licensing and employment opportunities. As a matter of NYPD policy all pending charges must be adjudicated within 18 months, it was left unadjudicated for five years and no required department hearing (GO-15) was conducted.

48.    Plaintiff pleads these allegations as part of her retaliation and continuing-harm narrative and not to relitigate claims previously adjudicated. To the extent events prior to September 25, 2022 are referenced, they are pleaded as background and context only.

**Objective Intrusions, Evidence Tampering, and Privacy Violations (Fourth Amendment—post-September 25, 2022; background events pled for context only)**

**Background intrusions (pre-September 25, 2022) — context only.**
49.    Plaintiff pleads the following events as background and context only. Between approximately 1:00 a.m. and 2:00 a.m. on April 14, 2022, while Plaintiff was asleep at her residence in Charlotte, North Carolina, SD cards were removed from Plaintiff's CPI Security home cameras, eliminating local backups of recorded video. Plaintiff alleges that the removal compromised her ability to preserve and access recorded evidence. (See Ex.7 [screen shots].)

50.    Between approximately March 24 and April 1, 2022, while Plaintiff traveled, Plaintiff returned to find her back door ajar and later determined that recorded video footage covering the period of her absence had been deleted from both the system and cloud-based backup. Plaintiff reported the matter to CMPD. (refer to Ex. 7)

51.    Plaintiff does not seek damages for these pre-limitations events to the extent time-barred; they are pled as context relevant to later, timely intrusions and continuing harm.

**Unauthorized disarm notification (September 27, 2022) — objective, timely anchor.**
52.    On September 27, 2022, while Plaintiff was in New York State on the above listed date, Plaintiff received an in-app notification indicating that her home security system had been disarmed from within the home without Plaintiff's authorization. Plaintiff contacted authorities and requested a response/welfare check. Plaintiff has petitioned CMPD for a record request and will provide evidence of her location at the time of the incident.  (See Ex.8 [screen shots].)

**ADT event history confirming unauthorized arm/disarm (June 17, 2023) — objective, timely anchor.**
53.    On June 17, 2023, while Plaintiff was away from home, Plaintiff's alarm system was armed and disarmed using the correct security code despite no authorized access in her absence. Plaintiff requested an event history from ADT, and an ADT technician emailed Plaintiff an event record reflecting the relevant system activity. (See Ex.11 [documents].) Plaintiff reported related concerns to CMPD. (See Ex.9 [email, police report].)

**Recurring network compromise indicator ("Resideo Home Security").**
54.    Plaintiff's home Wi-Fi network repeatedly displayed a device identified as "Resideo

10

Home Security," which Plaintiff did not authorize. Plaintiff alleges the device continued to reappear despite password changes and replacement equipment, indicating repeated unauthorized access to Plaintiff's home network and connected systems.
(See Ex.10.[screen shots])

**Use and purpose (non-speculative linkage).**
55.     Plaintiff pleads the above events based on contemporaneous system notifications, provider records, and law-enforcement reports. Plaintiff will seek targeted third-party records—including CPI Security and ADT access logs, device identifiers, administrative-change histories, and related records—to identify the actor(s) responsible and determine the methods used.

56.     Plaintiff alleges the City's inadequate oversight, investigation, and discipline regarding reports of unlawful surveillance and evidence tampering—despite repeated notice through complaints, records requests, and documented incidents—reflects deliberate indifference and was a moving force behind the continuing violations alleged herein.

57.     Plaintiff alleges the intrusions and evidence tampering described above demonstrate a continuing and credible threat of recurrence, and that monetary damages alone are inadequate to prevent ongoing violations of her privacy and security. Plaintiff seeks narrowly tailored injunctive relief prohibiting further unauthorized entries, access, surveillance-system tampering, and interference with preservation of evidence.

**Internal Reporting, Notice, and Lack of Corrective Action (Supervisory Notice; Monell Context)**

**Pattern of non-responsiveness to misconduct complaints (Monell context).**
58.     NYPD policy requiring supervisor reporting of discrimination/retaliation. The NYPD Administrative Guide, Procedure **332-01**, identifies certain personnel as "mandated reporters," including uniformed and civilian supervisors, managers, and EEO liaisons. Under that procedure, mandated reporters are required to promptly report workplace discrimination, sexual harassment, and/or retaliation to the NYPD Office of Equal Employment Opportunity ("OEEO") when they observe discriminatory conduct or become aware of allegations or complaints of employment discrimination, sexual harassment, and/or retaliation. Plaintiff pleads this policy to show the existence of established reporting requirements and to provide context for Plaintiff's allegations that supervisory personnel were on notice of protected complaints and failed to ensure appropriate reporting and corrective action. Plaintiff asserts that a lack of corrective action after notice contributed to the continuation of the retaliatory and intrusive conduct alleged herein. Plaintiff pleads these facts as context supporting municipal liability under Monell, not as a standalone constitutional claim to any particular internal investigative outcome.
 (See Ex.11[procedure document.)

**Notice to Former Police Commissioner Sewell (April 26, 2023 and May 4, 2023) — Personal Involvement by Notice and Failure to Implement Safeguards**

59.    On April 26, 2023, Plaintiff emailed former Police Commissioner Keechant Sewell at her official NYPD email address with the subject line "PLZZZZZZZZ OPEN & READ." In that message, Plaintiff reported ongoing harassment, surveillance, and retaliation that Plaintiff attributed to NYPD personnel and affiliated actors, described her fear for her safety, and requested help and intervention from the Police Commissioner to stop the conduct.

60.    On May 4, 2023, Plaintiff sent a follow-up email to Commissioner Sewell again reporting that the conduct had continued and worsened. Plaintiff again requested intervention and described ongoing fear for her safety and the safety of her family. (See Ex.12[emails].)

61.    Plaintiff alleges that Commissioner Sewell, as Police Commissioner and final policymaker for the NYPD with authority over oversight, investigations, and safeguards, received these written notices and had the authority to direct corrective action or protective measures. Plaintiff alleges that no meaningful safeguards were implemented in response to Plaintiff's written notices, and that the conduct Plaintiff reported continued thereafter.

62.    Plaintiff pleads these facts as evidence of notice to a final policymaker and lack of corrective action relevant to Plaintiff's claims for First Amendment retaliation and municipal liability under Monell. Plaintiff does not assert a standalone constitutional right to any particular internal investigative outcome; rather, Plaintiff pleads these facts to show notice, deliberate indifference, and continuation of harm after notice.

**Captain Kathleen Fahey — Notice and Failure to Intervene as Supervisor**

63.    *Notice to Fahey.* Plaintiff reported Lieutenant Hong Chen's conduct to Captain Kathleen Fahey and requested supervisory intervention.

64.    *Failure to take reasonable supervisory steps.* Plaintiff alleges Fahey failed to take reasonable supervisory steps to stop or remediate the retaliatory conduct, allowing the hostile and punitive environment described herein to persist.

65.    *Causation.* Plaintiff alleges Fahey's inaction contributed to adverse employment conditions and related economic harm, including the circumstances that culminated in Plaintiff's Constructive Discharge and the continuing consequences that followed.

**Internal Affairs Contacts and Abrupt Termination of Communications (Ellis, Fitzgerald, DeLossantos)**

**Internal Affairs complaint and initial contacts.**
66.    Plaintiff alleges she submitted complaints through NYPD Internal Affairs channels regarding the misconduct described herein. Plaintiff alleges that IAB personnel, including Detective Vanessa DeLossantos, Detective Andrew Fitzgerald, and Detective Mezchelyn Ellis, contacted Plaintiff in connection with those submissions.

**DeLossantos — assigned contact then abandonment.**

67.     Plaintiff alleges that DeLossantos was assigned and/or initiated contact regarding Plaintiff's complaint(s), but thereafter ceased communications and did not provide meaningful follow-up, leaving Plaintiff without an effective internal avenue to address ongoing conduct. Plaintiff alleges this occurred during a period when Plaintiff continued to report ongoing retaliation and intrusions.

**Fitzgerald — hostile call and cessation of communication.**

68.     Plaintiff alleges Fitzgerald contacted her by telephone regarding her complaint. Plaintiff alleges Fitzgerald used hostile or contemptuous language during the call and thereafter terminated communication without meaningful follow-up.

**Ellis — single contact then cessation.**

69.     Plaintiff alleges Ellis contacted her regarding her complaint and then ceased communications after a single call, without meaningful follow-up or resolution.

70.     Plaintiff pleads the foregoing Internal Affairs interactions as evidence that Plaintiff sought redress through official channels, that supervisory/oversight personnel were placed on notice, and that the absence of meaningful follow-up contributed to the continuation of the conduct alleged herein. Plaintiff does not assert a standalone constitutional right to any particular internal investigative procedure or outcome; rather, Plaintiff pleads these facts as relevant to retaliation, notice, and municipal liability under Monell.

**MCU Credit Union "Under Investigation" Statement – October 9, 2024**

71.     On or about October 9, 2024, at approximately 1:00 p.m., Plaintiff was present at MCU Credit Union, 1660 Hempstead Turnpike, Elmont, New York, in connection with a loan application. Plaintiff observed an unidentified individual ("John Doe") speak with branch personnel, including the Assistant Manager, and state words to the effect that Plaintiff was "under investigation."

72.     Plaintiff alleges the statement was false and resulted in adverse treatment and interference with Plaintiff's financial affairs, including disruption to banking/credit-related activity.

73.     To preserve objective evidence of this incident, Plaintiff prepared written preservation requests to the financial institution(s) seeking retention of relevant materials referencing Plaintiff.

**Related incidents (pattern/background).**

74.     Plaintiff further alleges similar interference occurred at other financial institutions, including a Chase Bank branch at 5618 Albemarle Road, Charlotte, North Carolina, and a Navy Federal branch in Columbia, Maryland. Plaintiff pleads these additional incidents as background/pattern evidence.

**Pattern of Coordinated Surveillance and Harassment Across Jurisdictions**
(Context, Continuity, and Chilling Effect)

**Interstate Surveillance by Vehicle (NY Plate HZD-7323) October 2, 2022:**
75.     On or about October 2, 2022, at approximately 5:30 a.m., Plaintiff departed Brooklyn, New York and traveled by car to Charlotte, North Carolina. During the trip, Plaintiff observed a black Dodge Charger bearing New York registration HZD-7323 traveling in a manner consistent with following Plaintiff's vehicle. At approximately 12:24 p.m., while Plaintiff was traveling through Virginia on or near I-85 South, Plaintiff photographed the vehicle before it accelerated away. (See Ex.13 [photo,dmv abstract].)

76.     Plaintiff observed features consistent with an unmarked NYPD vehicle, including equipment at the rear area that are consistent with a tracking device. Plaintiff thereafter attempted to confirm ownership through a DMV inquiry and received a "no record found" response. Based on her NYPD training and experience, unmarked NYPD vehicles may routinely appear "No Record Found", on a record check for concealment purposes—and the surrounding circumstances.

**Aggressive Tailgating and Menacing Gestures-March 30, 2023**
77.     On or about March 30, 2023, Plaintiff left a local dry cleaner in Charlotte, North Carolina and was followed by an unidentified vehicle whose driver tailgated Plaintiff aggressively on Highway 485 South. Plaintiff observed a passenger in the vehicle make menacing gestures toward her and the vehicle operator subsequently surveilled her inside a BJs. Plaintiff feared for her safety and reported the incident to the Charlotte-Mecklenburg Police Department, including to Officer K. McClure, and documented the incident for recordkeeping.
(See Ex.14 [photo,police report].)

78.     Plaintiff pleads this incident as an example of intimidation consistent with the broader pattern of surveillance and harassment alleged herein and as relevant to her request for injunctive relief.

**Vehicle "Box-In" / Intimidation at McDonald's- February 5, 2024**
79.     On or about February 5, 2024, at approximately 9:57 a.m., Plaintiff parked near McDonald's, 1380 Broadway, Brooklyn, New York. Plaintiff alleges that multiple unidentified individuals used two vehicles—one bearing New York registration KYF-9688 and another bearing Virginia registration TRB-6211—to surround and impede Plaintiff's vehicle as Plaintiff exited and entered the restaurant. Plaintiff photographed the vehicles and/or individuals involved. Plaintiff does not assert a standalone constitutional right to any particular internal investigative procedure or outcome; rather, Plaintiff pleads these facts as relevant to retaliation, notice, and municipal liability under Monell. (See Ex.15.[ photo, ccrb complaint]).

80.     Plaintiff alleges the conduct was intended to intimidate and monitor her movements. Plaintiff further alleges that she later recognized some of the same individuals from prior observations at or near One Police Plaza, although she did not understand the significance of

14

those sightings at the time. Plaintiff pleads this recognition upon information and belief and based on her later review of the photographs and prior observations.

**Recent Escalation: Airport Surveillance and Hospital Intimidation (January 2026)**

81.     Incident on or about January 30, 2026: Emergency Department Intimidation (NHMHMC) On or about January 30, 2026, Plaintiff presented to the emergency department at NHMHMC for evaluation of acute neurological symptoms and was treated and/or evaluated for stroke-related concerns. *Plaintiff asserts that the defendant's continual course of conduct is impeding her health and ability to adequate represent herself.*

82.     While Plaintiff was in the emergency department, an unidentified male ("John Doe") and an unidentified female ("Jane Doe") entered the facility and identified themselves to intake staff and the treating provider as law-enforcement officers, stating that they were present because they were "investigating" Plaintiff.

83.     Plaintiff asserts there is no lawful basis for any such "investigation" communicated in any setting. Plaintiff alleges the purpose and effect of this conduct was to stigmatize and intimidate Plaintiff in a medical environment, to undermine her credibility, and to chill her continued pursuit of complaints and legal remedies. Plaintiff further alleges the conduct caused distress and disruption of her physical wellbeing. (See Ex. 16 [medical doc].)

**Coordinated Monitoring at JFK Airport - January 10, 2026:**

84.     On or about January 10, 2026, at approximately 12:41 p.m., Plaintiff observed an unidentified white female monitor her movements at John F. Kennedy International Airport ("JFK"), beginning at check-in and continuing through the security checkpoint.

85.     Plaintiff then observed the female communicate with and/or signal to two unidentified males, who thereafter followed and monitored Plaintiff through the terminal area until Plaintiff boarded her flight.

86.     Plaintiff possesses a photograph of one of the individuals.Plaintiff pleads these facts as evidence of coordinated monitoring consistent with the pattern of intimidation alleged herein. Upon information and belief, based on the timing, coordination, and repeated pattern of surveillance alleged in this Complaint, these individuals acted in coordination with other persons involved in the conduct described herein.  (See Ex.17 [photo].)

**CMPD Internal Affairs Report, Standard Audio Recording, Preservation Request, and Records Nonresponse (July 2025–October 2025)**

87.     After the July 9, 2025 incident involving the vehicle bearing plate 71144V, Plaintiff reported the matter to CMPD Internal Affairs, including to Sgt. Lingle. Plaintiff recorded video of the vehicle and provided identifying information.

88.     Plaintiff alleges that, as a standard practice when Internal Affairs receives a complaint, the interviewing officer records the intake/interview. Plaintiff alleges Sgt. Lingle informed Plaintiff

15

that the vehicle was a CMPD vehicle during this Internal Affairs contact.

89.     To preserve this objective evidence, Plaintiff sent written communications requesting preservation of the Internal Affairs audio recording and related materials, including any incident notes, logs, and associated records.

90.     Plaintiff also submitted a written public-records request seeking the Internal Affairs recording and related documentation. Plaintiff alleges that after submitting the preservation request and records request, CMPD's communications regarding the requested materials ceased and Plaintiff did not receive the requested recording or a meaningful response.

91.     Plaintiff pleads these facts as evidence that she pursued formal reporting channels, that law-enforcement officials were on notice of the July 9, 2025 incident and the identity of the vehicle, and that the failure to provide or address preservation/records requests contributed to ongoing obstruction and impaired Plaintiff's ability to document and prove ongoing misconduct. Plaintiff seeks narrowly tailored injunctive relief, including preservation and production of existing recordings and records through appropriate process.

**Repeated Surveillance in Two States (Charlotte, NC and Woodmere, NY) — March 11, 2025 and April 28, 2025**

92.     On or about March 11, 2025, Plaintiff was present at Infinity Live, located at 7004 Smith Corners Blvd., Charlotte, North Carolina 28269. Plaintiff observed an unidentified male enter the venue after her. While Plaintiff was seated, the individual remained in close proximity, stared at Plaintiff, and lingered near Plaintiff's table in a manner that caused Plaintiff to feel threatened and uncomfortable.

93.     On or about April 28, 2025, Plaintiff patronized Backstage, located at 948 Broadway, Woodmere, New York. Plaintiff observed an individual who appeared to be the same person as in the March 11, 2025 incident enter after her and again remain in proximity while monitoring Plaintiff's movements.

94.     Plaintiff captured clear photographs and/or video of the individual from these incidents. Upon information and belief, surveillance footage from Infinity Live for March 11, 2025 would further corroborate the individual's presence and movements. (See Ex. 18 [photos].)

95.     Plaintiff pleads these incidents as evidence of recurring monitoring across jurisdictions consistent with the broader pattern of intimidation alleged herein, and as relevant to Plaintiff's request for injunctive relief and her allegation that the identities of certain participants remain unknown absent third-party records and discovery.

**Timeliness and Use of Pre-Limitations Events. (solely as background and contextual)**

96.     Plaintiff pleads certain events occurring prior to **September 25, 2022** solely as background and contextual evidence relevant to motive, intent, notice, pattern, and municipal custom and practice. Plaintiff does not seek damages for any discrete pre-September 25, 2022

16

acts to the extent time-barred. Plaintiff seeks relief based on defendants' actionable conduct and resulting injuries occurring within the limitations period and continuing thereafter.

### Background (Pre-September 25, 2022) — Context, Motive, and Notice

97.    *For context only*, Plaintiff alleges that retaliatory treatment began after Plaintiff made internal complaints in or about 2007 concerning discriminatory treatment by a well-regarded supervisor. Plaintiff further alleges that an off-duty dispute involving a vehicle Plaintiff financed for her ex-boyfriend resulted in her arrest that Plaintiff believed at the time was retaliatory (this issue was well documented with the NYPD/assigned a investigator) and intended to jeopardize her employment; Plaintiff alleges the matter was later dismissed, the disposition was sealed, a settlement was reached and Plaintiff continued her NYPD employment. (refer Ex. 1.)

98.    During Plaintiff's NYPD employment, Plaintiff alleges she was subjected to retaliatory and punitive treatment through supervisory practices and internal processes, including hostile and punitive supervision (Hong Chen), Sub Rosa Investigations, and  "integrity test" type scrutiny. Plaintiff pleads these allegations solely as context relevant to motive and the escalation described below and does not seek to relitigate prior adjudicated employment claims.

99.    [*Context Only*]  On or about April 13, 2021, Plaintiff alleges she was referred to (Adam Bloom) NYPD Psychological Services without proper legal or ethical justification and that the encounter was recorded without informed consent, contributing to a stigmatizing narrative and distress. Plaintiff pleads this as background relevant to the pattern of intimidation and discrediting alleged herein.

100.    Plaintiff further alleges that by early 2022, the conduct escalated beyond the workplace and into intrusions and evidence interference at Plaintiff's residence, including suspetitious entry and interference with home-security recording media.

Plaintiff pleads pre–September 25, 2022 incidents solely as background relevant to context, motive, notice, and pattern. Plaintiff does not seek damages for any discrete pre–September 25, 2022 acts to the extent time-barred.

### Post-September 25, 2022 Conduct — Actionable Acts and Continuing Injuries

### Intrusions and Evidence Interference (Fourth Amendment)

101.    Unauthorized Disarm Notification (Sept. 27, 2022). On Sept. 27, 2022, while Plaintiff was out of state, Plaintiff received an in-app notification that her home security system had been disarmed from within the home without authorization. Plaintiff contacted authorities.

102.    ADT Event History Showing Unauthorized Arm/Disarm (June 17, 2023). On June 17, 2023, while Plaintiff was away, Plaintiff's alarm was armed/disarmed using the correct code despite no authorized access. ADT provided an event history by email. Plaintiff reported the incident.

**Notice to Policymakers and Oversight (Monell notice / protected petitioning)**

103.    OIG-NYPD Complaint and Written Declination (Sept. 30, 2022). Plaintiff submitted a complaint to OIG-NYPD, and OIG-NYPD issued a written response/declination. Plaintiff pleads this as notice and protected petitioning activity.

104.    Direct Notice to Police Commissioner Sewell (Apr. 26 & May 4, 2023). Plaintiff emailed Commissioner Sewell reporting ongoing harassment/surveillance and requesting intervention; Plaintiff sent a follow-up email on May 4, 2023.

105.    Documented Surveillance / Intimidation Events (pattern + injunction support) Interstate Surveillance by Vehicle (Oct. 2, 2022). Plaintiff observed a black Dodge Charger bearing NY plate HZD-7323 traveling in a manner consistent with following Plaintiff during interstate travel and photographed the vehicle in Virginia.

106.    Financial Interference at MCU (Oct. 9, 2024). At MCU Credit Union in Elmont, NY, Plaintiff observed an unidentified individual tell bank personnel Plaintiff was "under investigation," disrupting Plaintiff's banking/credit activity.

107.    Repeated Surveillance in Two States (Mar. 11 & Apr. 28, 2025). Plaintiff observed an individual monitor her movements at Infinity Live (Charlotte, NC) and later at Backstage (Woodmere, NY). Plaintiff has clear photographs/video; Plaintiff will seek preservation/production of relevant venue footage where available.

108.    Surveillance by Confirmed CMPD Vehicle (July 9, 2025). Plaintiff recorded video of a black Chevrolet with plate NC 71144V repeatedly appearing near her movements and following her into her community. Plaintiff reported the incident to CMPD Internal Affairs; Sgt. Lingle confirmed the vehicle was a CMPD vehicle. Plaintiff requested preservation of the standard IA recording and submitted a public-records request.

109.    Records Withholding / Doe Identification (Monell + inability to identify actors) FOIL Appeals Letter (Dec. 12, 2024) and Nonproduction (Apr. 4, 2025). NYPD FOIL Appeals correspondence identified an estimated determination date on or about Apr. 4, 2025; Plaintiff alleges records were not produced as represented, impairing identification of Doe defendants and pleading of roles.

110.    Interference with legal process / administrative handling (pattern evidence) Article 78 Processing Irregularities (May 22–June 4, 2025). Plaintiff observed an unidentified individual in proximity to court staff during filing at Kings County Clerk (May 22, 2025). The matter was later marked dismissed on default (June 4, 2025) and Plaintiff experienced appellate processing issues; Plaintiff reported concerns to the Commission on Judicial Conduct. § 50-h Scheduling and "File Access Closed" Email (Sept. 2025). City counsel scheduled a §50-h examination, then the matter did not proceed; on Sept. 12, 2025, counsel stated they "no longer had access" to the file and promised follow-up that did not occur. Plaintiff pleads this as evidence of delay/non-responsiveness, not as a standalone due-process claim.

18

111.    Recent escalation supporting injunctive relief (January 2026)
JFK Coordinated Monitoring (Jan. 10, 2026). Plaintiff observed coordinated monitoring at JFK involving an unidentified female and two males and possesses a photograph.

112.    Emergency Department Intimidation (Jan. 30, 2026). While Plaintiff was being evaluated for stroke-related symptoms, two individuals identified themselves to staff as law-enforcement officers and stated they were "investigating" Plaintiff. Plaintiff is aware of no lawful basis; Plaintiff alleges the purpose/effect was intimidation and stigmatization.

113.    Plaintiff alleges the foregoing post-September 25, 2022 incidents reflect actionable conduct and continuing injuries occurring within the limitations period and continuing thereafter, support a credible threat of recurrence, and are relevant to Plaintiff's **First Amendment retaliation claim**, Fourth Amendment claim (where objectively anchored), and Monell claim.

114.    These allegations are pleaded solely to support Plaintiff's Fourth Amendment and Monell claims and her request for injunctive relief.

115.    Plaintiff alleges that, from at least 2019 through 2026, defendants and unknown participants continued a course of retaliatory monitoring and interference that has caused ongoing harm to Plaintiff's safety, privacy, and daily life. Plaintiff further alleges that false "investigation" assertions and related communications to third parties have resulted in adverse treatment and reputational and economic harm, including loss of wages and retirement-related benefits tied to retaliatory discipline and record control.

116.    **Plaintiff respectfully "PETITIONS" this Honorable Court to appoint an independent monitor**—whether through Congress, the Department of Justice, or another appropriate authority—to review and investigate the justification and procedures by which plaintiff was placed on any government watchlist and subjected to unlawful investigations without the authority of law, forensically evaluate the handling of the defendants current and past actions internally, externally and legally.   Said monitor should be empowered to recommend corrective measures to prevent ongoing misuse. The defendant's conduct is a direct threat to public safety and the integrity of the judicial process.

### FIRST CAUSE OF ACTION: (42 U.S.C. § 1983)
### FIRST AMENDMENT RETALIATION
### (Against Individual Defendants; City only under Monell in Count IV)

117.    Plaintiff repeats and realleges all prior paragraphs as if fully set forth herein.

118.    Plaintiff engaged in activity protected by the First Amendment, including: (a) filing and pursuing administrative complaints and requests for redress (including EEOC-related activity and internal complaints); (b) reporting alleged misconduct to oversight bodies (including OIG-NYPD and NYPD leadership); (c) pursuing court relief and appellate review; and (d)

19

making records/preservation requests related to the misconduct alleged.

119.    Individual Defendants, acting under color of state law, took adverse actions that would deter a person of ordinary firmness from continuing to speak, complain, or petition for redress, including but not limited to: (a) targeted monitoring and intimidation; (b) interference with Plaintiff's efforts to document and preserve evidence; (c) obstruction and delay in providing records necessary to identify responsible actors; and (d) dissemination or inducement of third-party reliance on false "investigation" assertions that caused adverse treatment.

120.    Plaintiff alleges a causal connection between her protected activity and the adverse actions, as supported by: (a) temporal proximity between protected complaints and subsequent adverse conduct; (b) escalation after written notice to NYPD leadership; (c) recurrence of similar adverse conduct after Plaintiff pursued administrative and judicial remedies; and (d) continued conduct despite repeated reports and documentation.

121.    As a direct and proximate result, Plaintiff suffered concrete injuries including economic harm (lost benefits, diminished earning capacity, mitigation costs, and disrupted opportunities), reputational harm, and ongoing fear and disruption supporting injunctive relief.

122.    The Individual Defendants' actions violated Plaintiff's clearly established First Amendment rights. Plaintiff seeks compensatory damages (to the extent available), declaratory relief, and narrowly tailored injunctive relief to prevent further retaliation and interference with lawful redress.

123.    Defendants Included: This Count is brought against the Individual Defendants personally involved in the retaliatory acts alleged herein, including those who received notice and failed to implement safeguards where they had authority to do so, and those identified through discovery as Doe participants.

### SECOND CAUSE OF ACTION: (42 U.S.C. § 1983)
### FOURTH AMENDMENT (Unreasonable Searches/Seizures)
### (Against Individual Defendants; City only under Monell in Count IV)

124.    Plaintiff repeats and realleges all prior paragraphs.

125.    The Fourth Amendment protects against unreasonable searches and seizures, including warrantless entry into a home and certain forms of physical intrusion or seizure of property.

126.    Plaintiff alleges that unknown individuals acting under color of state law, and/or in coordination with state actors, engaged in objective intrusions and evidence interference, including unauthorized disarming of Plaintiff's home security system while Plaintiff was away (Sept. 27, 2022) and alarm system events using the correct security code without authorization (June 17, 2023), as reflected in system notifications and provider event records.

127.    Plaintiff further alleges that the course of conduct included interference with Plaintiff's ability to preserve evidence of intrusions and to secure documentation, thereby compounding the invasion of privacy and the risk of recurrence.

128.    Plaintiff pleads these events as Fourth Amendment violations and as support for declaratory and injunctive relief. Plaintiff will seek third-party logs and access records from providers and subpoenas to identify the responsible actors and the means used.

129.    The Individual Defendants' conduct violated Plaintiff's clearly established Fourth Amendment rights. Plaintiff seeks compensatory damages (to the extent available) and narrowly tailored injunctive relief prohibiting further unauthorized entries, tampering, or interference with evidence preservation.

130.    Defendants Included: This Count is brought against Doe defendants and any named defendants shown through discovery to have participated in, directed, procured, or covered up the intrusions and evidence interference.

### THIRD CAUSE OF ACTION (42 U.S.C. § 1983)
### FOURTEEN AMENDMENT ( Procedural Due Process)  (42 U.S.C. § 1983)
### (Against Individual Doe Defendants; City only under Monell in Count IV)

131.    Plaintiff repeats and realleges all prior paragraphs.

132.    Plaintiff alleges Defendants deprived her of  department hearing (GO-15) to address the pending pepper spray charges, a settlement officer to dissolve the pending charges, failed to adhere to the department timeline to depose plaintiff, which cost plaintiff terminal leave pay and department benefits that would advance future employment.

133.    Plaintiff alleges Defendants deprived her of protected interests without constitutionally adequate process, including (as applicable) tangible employment-related benefits and/or a recognized liberty interest where government action imposed stigma plus a tangible alteration of status.

134.    Plaintiff alleges that Defendants' use of official processes and records control—combined with prolonged unresolved disciplinary status and delayed closure (April 2024) and continued withholding of key records necessary to challenge adverse action or obtain meaningful review—deprived Plaintiff of a meaningful opportunity to be heard at a meaningful time and in a meaningful manner.

135.    Plaintiff does not assert a standalone constitutional right to a particular internal investigation or to FOIL responses; rather, Plaintiff alleges that Defendants' actions and omissions, taken together, functioned to block meaningful procedural channels and caused deprivation of protected interests.

136.    Plaintiff seeks declaratory relief and appropriate injunctive relief to ensure non-interference with record preservation and to prevent continuation of unconstitutional practices.

137.    Defendants Included: This Count is brought against Individual Defendants personally involved in the decisions and acts that deprived Plaintiff of process and against the City only under Monell as separately pleaded.

### FOURTH CAUSE OF ACTION:(42 U.S.C. § 1983)
### MUNICIPAL LIABILITY (Monell)
### (Against the City of New York)

138.    Plaintiff repeats and realleges all prior paragraphs.

139.    The City is liable under Monell because Plaintiff's constitutional injuries were caused by municipal policy, custom, or practice, and/or by the City's deliberate indifference in failing to train, supervise, discipline, and correct known misconduct.

140.    Plaintiff alleges the City had notice of the misconduct and risk of constitutional violations through, among other things: (a) Plaintiff's written communications to NYPD leadership; (b) Plaintiff's reports to oversight channels including OIG-NYPD; and (c) repeated documented incidents and preservation/records requests.

141.    Despite notice, the City failed to implement meaningful safeguards, corrective measures, or oversight sufficient to prevent continuation of the conduct alleged, including retaliatory monitoring and intimidation, obstruction and delay in providing records needed to identify actors, and interference with evidence preservation.

142.    The City's policies/customs/practices and deliberate indifference were a moving force behind the violations of Plaintiff's First and Fourth Amendment rights (and Due Process to the extent proven). Plaintiff seeks compensatory damages (where available), declaratory relief, and narrowly tailored injunctive relief.

### FIFTH CAUSE OF ACTION STATE TORTS
### (Supplemental Jurisdiction, 28 U.S.C. § 1367)
### (Against Individual Defendants and/or the City where not barred; plead in the alternative.)
### Defamation (if within limitations + properly noticed)

143.    Plaintiff repeats and realleges prior paragraphs.

144.    Defendants published false statements of fact to third parties implying Plaintiff was "under investigation" and/or otherwise imputing criminality or professional unfitness.

145.    The statements were false, made with at least negligence (and, where applicable, actual malice), and caused reputational harm and economic injury.

146.    Plaintiff seeks damages and appropriate relief.

**WHEREFORE,** Plaintiff demands judgement against the Individual Defendants under 1983/ Monell and against the City under Monell as separately pled as follows: (i) compensatory damages in an amount to be determined at trial; (ii) punitive damages against the individual defendants where permitted by law; (iii) back pay, front pay, and loss of benefits associated with constructive discharge; (iv) presumed and special damages on tort claims; (v) declaratory and injunctive relief to cease all unlawful conduct (vi) reasonable mitigation fees and security equipment replacement cost, relocation costs (vii) such other and further relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment:

1. Awarding compensatory damages against the individual defendants and the City (where applicable) in an amount to be proven at trial;

2. Awarding punitive damages against the individual defendants where legally available;

3. Declaring that defendants' conduct violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments and applicable federal statutes;

4. Granting narrowly tailored injunctive relief to prevent ongoing retaliation and unlawful interference with Plaintiff's security systems, evidence, and records, and to prohibit further dissemination of false statements made under color of law; relief prohibiting further surveillance, tracking, harassment, trespass, or any contact, whether by defendants or third party;

E. compensatory replacement security equipment, relocation expenses, back pay front pay terminal leave pay, issuing of licensing, personnel record expunged, removal from unlawfully entry on databases;

F. Awarding reasonable fees and costs where authorized by law (including 42 U.S.C. § 1988 for § 1983 claims);

G. Awarding pre- and post-judgment interest; and

H. Granting such other and further relief as the Court deems just and proper.

Date: March 6, 2026
Charlotte, NC

23

Respectfully submitted,

/s/ Shantell McKinnies
Shantell McKinnies
Plaintiff, Pro Se
2050 Darby View Lane
Charlotte, NC 28215
Email: Mckinniessha45@icloud.com
980-230-9140

cc: Counsel of record (via ECF)

24